No. 43,274

W. H. Addington, *Appellant*, v. Board of County Commissioners, County Clerk and County Treasurer, of Morton County, Kansas, *Appellees*.

(382 P. 2d 815)

Opinion filed June 8, 1963.

*Shelley Graybill*, of Elkhart, argued the cause, and was on the briefs for the appellant.

*Keaton G. Duckworth*, of Elkhart, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: Plaintiff (appellant) W. H. Addington commenced this action pursuant to the provisions of G. S. 1949, 79-2005, against the defendants (appellees), the Board of County Commissioners, the county clerk and county treasurer of Morton county, to contest the validity of the assessment of plaintiff's property for the year

1961, and to recover the illegal portion of the taxes so assessed and paid by plaintiff under protest.

The primary issue is whether an assessment that fixes the assessed value of plaintiff's property for tax purposes in excess of thirty per cent of its true value, while other property in the taxing district is assessed for tax purposes at the median ratio of twelve per cent of its true value, makes the assessment illegal as to the plaintiff-taxpayer.

Plaintiff's petition, to which his protest was attached, alleged that the taxes were paid under protest, the amount being the result of a tax levied against assessments alleged to be excessive, illegal and void. The amounts involved were enumerated, plaintiff setting forth in his protest the amount of the legal tax due. Plaintiff was at all times the owner of a grain elevator and grain storage facilities in Morton county.

Pursuant to G. S. 1961 Supp., 79-1412a *Eighth*, the director of property valuation issued a grain elevator bulletin to all county clerks-assessors which provided in part that:

"The grain elevator schedule as it appears in the 1961 Personal Property Assessment Schedule has been compiled at 30 per cent of actual or true value. Permission is hereby granted the county clerk-assessor to equalize the assessed value as determined by the assessment schedule to the assessment ratio of the county. This applies to both real and personal grain elevators, tube and flat storage."

The county clerk, acting as assessor, made a valuation of plaintiff's property and then applied the thirty per cent formula, in accordance with the mentioned assessment schedule, to that valuation. The record discloses the median ratio of assessed value of real estate to its actual value of property in the county sold that year was twelve per cent.

The case was tried to the court, which made findings of fact and conclusions of law. The court found that plaintiff's elevator properties were assessed and assigned a value for tax purposes of $134,805; that the fair market value of plaintiff's property was $340,000; that the report of the real estate assessment ratio study for the year 1961 showed the median ratio of assessed value of real estate to its sale value on property sold that year to be twelve per cent, being nineteen per cent on urban real estate sold and eleven per cent on rural real estate sold; that certain items of plaintiff's property were omitted intentionally by the assessor to compensate for depreciation not allowed as such on the storage

facilities and to effect equalization from the thirty per cent market value established by the assessor's manual to the twenty-one per cent the assessor was attempting to achieve; and that the assessor intentionally omitted a grain dryer worth $20,000, an aeration system in the concrete and flat storage, and a warehouse. The court then found there was no fraud or bad faith shown by the evidence on the part of the taxing officials, however inaccurate the results might appear, and concluded as a matter of law that the assessments complained of by the plaintiff were mistakes of fact for valuation purposes and were not illegal assessments of taxes as plaintiff contended; and further concluded that since the complaints of the plaintiff were mistakes in valuation and not an illegal assessment of taxes, it was a condition precedent upon the plaintiff for relief prayed that he appear before either the county board of equalization or the State Board of Tax Appeals, and dismissed plaintiff's petition, from which order plaintiff has appealed.

The plaintiff does not contend he owes no tax for 1961 but because of the alleged illegal assessment seeks abatement of part of the taxes levied. In essence, the plaintiff contends that the taxing officials, in assigning tax values for property in the taxing district, must use a uniform ratio between the assessed valuation for tax purposes and the true value of the property. The plaintiff does not complain that his property was assessed too high in and of itself but contends that since other property in the district was assessed at twelve per cent of true value and his property was assessed in excess of thirty per cent of true value, the assessment was illegal and the result of a systematic discrimination arbitrary in nature.

Art. 11, Sec. 1 of our state constitution provides that the legislature shall provide for a uniform and equal rate of assessment and taxation. In keeping with this mandate, the legislature made provision for a uniform and equal rate of assessment. G. S. 1949, 79-1406, provides that all property, real or personal, shall be valued at its actual value in money, and G. S. 1949, 79-501, also requires that both real and personal property be valued at its true value. It has been judicially recognized and is common knowledge that property in this state is not assessed at its true value, as required by the statutes. The habitual disregard of the statute relating to valuation of property for taxation by local assessors has been continuously condemned since the year 1872

(*Adams v. Beman*, 10 Kan. 37) in the decisions of this court. It was stated in *C. B. & Q. Rld. Co. v. Comm'rs of Atchison Co.*, 54 Kan. 781, 788, 39 Pac. 1039:

"In every instance where this court allowed the assessors an *inch* of leeway in valuing property, they have taken the proverbial *ell*, and more. The injustice of the system of taxation, growing out of the constant and continued disregard of the proper valuation of property, becomes more and more apparent in every case brought to this court where such proceedings are reviewed. The words of advice given from time to time in the decisions of this court to local assessors have not been of any practical utility, and the condemnation by this court of such unlawful conduct has not been given respectful attention."

(See, also, *Cummings v. National Bank*, 101 U. S. 153, 162, 25 L. Ed. 903.)

Where it is impossible to secure both actual value assessment and uniformity in assessment, the constitutional and statutory requirements of uniformity must prevail. The rule is well stated in 51 Am. Jur., Taxation, § 745, pp. 685, 686:

"Another ground for relief by way of abatement of tax assessments, which involves the valuation of property for tax purposes but is to be distinguished from simple overvaluation of the property, is the action of the assessing officers in placing a disproportionate valuation on particular property, or in other words, valuing certain property at a higher percentage of its actual value than other property in the taxing district is valued. Under many circumstances such action on the part of the assessing officers is regarded as good grounds for an abatement of the assessment on the property discriminated against, even though the result of such abatement is that none of the property in the tax district is assessed at its cash value as required by statute. The theory under which this violation or evasion of statutes requiring assessment at actual cash value is justified is that to permit a tax assessment which is disproportionate to other assessments to remain uncorrected would amount to a gross violation of the requirements of the constitutional provisions requiring uniformity of taxation, and that where it is impossible to secure both the standards of assessment at true value and equality and uniformity of taxation, the latter requirement is to be preferred as the just and ultimate purpose of the law."

Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation. The duty to assess at full value is not supreme but yields to the duty to avoid discrimination. (*Greene v. Louis. & Interurban R. R. Co.*, 244 U. S. 499, 61 L. Ed. 1280, 37 S. Ct. 673; *Sioux City Bridge v. Dakota County*, 260 U. S. 441, 67 L. Ed. 340, 43 S. Ct. 190, 28 A. L. R.

979; *Cumberland Coal Co. v. Board,* 284 U. S. 23, 76 L. Ed. 146, 52 S. Ct. 48.)

It is apparent that uniformity is necessary in valuing property for assessment purposes so that the burden of taxation will be equal. (*Wheeler v. Weightman,* 96 Kan. 50, 58, 149 Pac. 977, L. R. A. 1916A, 846.) It makes no difference what basis of valuation is used, that is, what percentage of full value may be adopted, provided it be applied to all alike. The adoption of full value has no different effect in distributing the burden than would be gained by adopting thirty per cent, twenty-one per cent or twelve per cent as a basis, so long as either was applied uniformly. Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxation. In the instant case if all the property in the county had been assessed at thirty per cent of its true value, plaintiff would have no cause to complain. The fraud upon plaintiff's rights resulted from the arbitrary distinction made between his elevator property and other property in the county. Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief. (*Bank v. Lyon County,* 83 Kan. 376, 111 Pac. 496; *Hamm v. State,* (Minn. 1959), 95 N. W. 2d 649.)

In our recent case of *Kansas City Southern Rly. Co. v. Board of County Comm'rs,* 183 Kan. 675, 331 P. 2d 899, a tax protest action brought under the provisions of G. S. 1949, 79-2005, we held that a petition alleging arbitrary, oppressive and discriminatory acts of the taxing officials in assessing the taxpayer's property at sixty per cent of its true value for tax purposes, while all other property in the county was assessed at twenty-one per cent of its true value, was sufficient to state a cause of action for a tax refund on the theory that the acts of the taxing officials in assessing the taxpayer's property for tax purposes constituted fraud on the rights of the taxpayer and destroyed uniformity and equality both in the manner and result of fixing the assessed valuation. Much of what

is said there is applicable in the instant case, and will not be repeated here. In the instant case the rate of assessment fixed by the county clerk-assessor at more than thirty per cent of the true value of plaintiff's property, as compared to the rate of assessment of twelve per cent of the market value of all other property located in the county and subject to the same tax levy, was so arbitrary, oppressive and grossly discriminatory that it constituted constructive fraud on the rights of the plaintiff as a taxpayer and destroyed uniformity and equality in the manner of fixing the assessed valuation; also, it was illegal, thereby entitling the plaintiff to the relief sought as to the illegal portion of the tax paid under protest.

The trial court's conclusion that plaintiff was required to first exhaust his administrative remedies before he could obtain the relief prayed for in his petition is erroneous. This action was commenced pursuant to section 79-2005 to contest the validity of the assessment and to recover the illegal portion of the taxes assessed. Although it would be entirely appropriate, and perhaps good practice, for a taxpayer to first present a grievance such as this to the administrative boards provided in the section, even though he claimed the assessment and levy were actually illegal rather than merely erroneous, nevertheless, courts cannot compel the taxpayer to adopt that procedure when the legislature makes it merely a cumulative and not an exclusive remedy. In the instant case the tax was an illegally assessed tax and not merely the correction of an error, an irregularity or mistake. The action was properly brought under section 79-2005.

The trial court attempted to justify the action of the assessor by its finding that in order for the assessor to equalize the assessed valuation he omitted certain items of property and, therefore, acted in good faith. G. S. 1961 Supp., 79-1412a *Second,* provides that the county assessor in the performance of his duties shall supervise the listing and assessment of *all* real estate and personal property in the county subject to taxation; G. S. 1949, 79-1406, provides that all property, real or personal, shall be valued at its actual money value; and 79-1426 provides that any assessor who shall knowingly fail to list or return for assessment or valuation any real or personal property, or who shall knowingly or wilfully list or return for assessment or valuation any real estate or personal property at other than its true value in money, or who shall wilfully

or knowingly fail to equalize any real or personal property at its true value in money, shall be guilty of a misdemeanor. Even though the assessor may have thought he was acting in good faith, his illegal acts in failing to comply with the mandate of the legislature constituted bad faith and constructive fraud. He could not fail to assess a portion of plaintiff's property and then apply the thirty per cent ratio to the remaining property so assessed. Good faith alone does not justify an assessment which is discriminatory in fact. (*Hamm v. State,* supra.)

In view of what has been said, the judgment of the trial court is reversed and the case is remanded with instructions to reinstate the action and enter judgment in plaintiff's favor in accordance with the views herein expressed and in accordance with the provisions of G. S. 1949, 79-2005.

It is so ordered.