No. 45,397

HEBER BEARDMORE, JR., H. K. BEARDMORE, SR., EDNA E. BEARDMORE and ROBERT J. GUTRU, d/b/a BEARDMORE DRILLING COMPANY, a Partnership, *Appellees* and *Cross-Appellants,* v. JESSIE MAE LING [substituted for JACK GIBBS], County Treasurer of Hodgeman County, Kansas, et al., *Appellants.*

(457 P. 2d 117)

Opinion filed July 17, 1969.

*Van Smith,* County Attorney, argued the cause, and *Lewis C. Carter,* of Topeka, was with him on the brief for the appellants.

*Carl L. Wettig,* of Wichita, argued the cause, and *Charles C. McCarter,* also of Wichita, was with him on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

FONTRON, J.: This is the latest in a series of cases reaching this court from the western reaches of our state involving the assessment of oil and gas properties. The plaintiffs, who are partners doing business as Beardmore Drilling Company, own and operate five oil and gas leases in Hodgeman County. They will be referred to herein either as plaintiffs or as Beardmore.

For the calendar year 1965, the five leases were assessed by the county clerk of Hodgeman County, wearing his assessor's hat, in the aggregate sum of $143,525. This figure was designed to represent thirty per cent of the justifiable value of all five leases and was arrived at by use of a formula prepared and distributed by the state director of property valuation.

Taxes levied against Beardmore's leases for the year 1965, computed on the basis of the assessor's valuation, amounted to $6671. Beardmore claimed the assessed values of its leases exceeded thirty per cent of their true justifiable value and were not uniform with valuations placed on other property in the county. Appeals by Beardmore to the County Board of Equalization and to the State Board of Tax Appeals proved fruitless. As a consequence, when Beardmore paid its 1965 taxes, it protested payment of $3094. This amount represented the excess over what Beardmore claimed should have been due had its leaseholds been assessed on the same basis as other property in Hodgeman County. Two actions were commenced by the plaintiffs to recover the taxes paid under protest, and these have been consolidated on appeal. Hereafter we shall speak of them as one case.

The district court found that two of the leases—the Mooney and the Robinson-Waters—were assessed so excessively as to amount to constructive fraud, and ordered a total refund of $846.90. The defendants, who are sometimes spoken of herein as the county, have appealed from this ruling. Conversely, the court found the three other leases were not so overly assessed as to amount to constructive fraud, and Beardmore has cross appealed from this part of the judgment.

We shall first turn our attention to the cross appeal, for we believe our decision thereon will dispose of the county's appeal as well.

The issue raised on the cross appeal is phrased by Beardmore in this fashion:

"Did the court err in determining that Appellees' properties were assessed uniformly and non-discriminatorily and at a comparable rate as real property in Hodgeman County, Kansas?"

A brief summation of the evidence is in order. The plaintiffs' witnesses were Heber Beardmore, Jr., one of the four partners, and G. L. Yates, a consulting petroleum engineer. The county relied on the county clerk-assessor, Leland Crouse, and Charles F. Weinaug, a research engineer and consultant. To an avid reader of the Kansas Reports, the names of Yates and Weinaug may sound familiar, since both experts have appeared on opposite sides in two recent cases involving oil and gas assessments, *Cities Service Oil Co. v. Murphy,* 202 Kan. 282, 447 P. 2d 791, and *Sebits v. Jones,* 202 Kan. 435, 449 P. 2d 551.

Both Mr. Yates and Professor Weinaug, testifying as experts, gave widely differing opinions of the justifiable values of the Beardmore leases although, with a single exception on the part of Dr. Weinaug, each placed a lower value on the individual leases than did the county assessor. In arriving at their opinions as to justifiable value, Messrs. Yates and Weinaug took dissimilar approaches and utilized differing factors, none of which need concern us here. Mr. Beardmore's opinions of value coincided closely with those of his expert, Mr. Yates, in being considerably lower than Dr. Weinaug's and much below the assessed values returned by the county assessor.

Mr. Crouse, the county assessor, testified that in assessing all oil and gas properties for 1965 he used the 1965 oil and gas schedules and forms prepared by the property valuation department, but made some minor adjustment in valuing two of the leases involved in this action. He also testified that the assessed valuations of the Beardmore leases for the year 1966, using 1966 state schedules, were considerable lower than 1965 assessed values.

When he was questioned concerning the ratio of assessed value of Hodgeman County real estate to its true value, Mr. Crouse testified the ratio was ten per cent for cultivated land, ten per cent for irrigated land and nineteen per cent for grass land, or a median ratio of fourteen per cent. He conceded that the assessment ratio study made by the property valuation department for 1965 was essentially correct as to real estate in that it showed a median ratio of fourteen per cent for Hodgeman County.

Extensive findings of fact were made by the trial court. Among them, the court found that in assessing the Beardmore leases the county assessor utilized and followed the Kansas Price Schedule of Oil and Gas Properties for 1965; that the values which were shown therein represented thirty per cent of justifiable values; and that all personal property in Hodgeman County, including all oil and gas leases, was assessed at thirty per cent of justifiable value.

Finding 27 reads as follows:

"Assessment ratio studies made by the State of Kansas Property Valuation Department for the year 1965 showing that rural farm land in Hodgeman County, Kansas, was assessed on an average of 14% of justifiable value is true and correct."

In findings 28, 29 and 30, the trial court found assessment ratios for specific categories of real estate to be as follows: ten per cent in case of upland cultivated land; ten per cent for irrigated land; twenty-three per cent for top grass land; and nineteen per cent for other grass land.

The court further found that no actual fraud or bad faith existed on the part of the taxing officials and that Crouse, the assessor, made a bona fide attempt to comply with relevant tax statutes. In addition, by a process of applying the Crouse assessed values to the justifiable values of Weinaug, the court concluded the assessment ratio of three leases—Huling, Waterhouse and Young—were not oppressive and discriminatory but lay within a reasonable range of thirty per cent of justifiable value. As to the Mooney and Robinson-Waters leases, however, the court found, again applying Crouse assessed values against Weinaug justifiable values, that the assessment ratio was some sixty per cent in each instance, which as a matter of law was arbitrary, oppressive and discriminatory.

On their cross appeal the plaintiffs argue that the assessment of all their oil and gas properties—the five leases in question—on the basis of thirty per cent of justifiable value, as the statutes then required (see K. S. A. 79-501, 79-1439, 79-1426, since amended by L. 1969, chap. 433), when at the same time real estate was knowingly assessed by the same taxing officials at fourteen per cent of its justifiable value, was so grossly discriminatory and oppressive as to constitute constructive fraud.

In support of their position, the plaintiffs place great reliance on the recent case of *Addington v. Board of County Commissioners*, 191 Kan. 528, 382 P. 2d 315, where the facts bear striking resem-

blance to those here. In the *Addington* case the plaintiff's grain elevator in Morton County was assessed at thirty per cent of actual or true value, in conformity with the grain elevator schedule promulgated by the director of property valuation, while the median ratio of the assessed value of real estate in the same county was twelve per cent of actual value. The plaintiff paid its taxes under protest and then instituted suit to recover the illegal portion. Upon trial of the action in district court judgment was entered for defendants.

In reversing the lower court's judgment, and in holding the assessment of Addington's elevator property at thirty per cent of real value to be discriminatory in a constitutional sense where real property was assessed at but twelve per cent of real value, this court said:

"Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxation. In the instant case if all the property in the county had been assessed at thirty per cent of its true value, plaintiff would have no cause to complain. The fraud upon plaintiff's rights resulted from the arbitrary distinction made between his elevator property and other property in the county. Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief. (*Bank v. Lyon County*, 83 Kan. 376, 111 Pac. 496; *Hamm v. State*, (Minn. 1959), 95 N. W. 2d 649)" (pp. 531, 532.)

Included among the authorities cited in the *Addington* opinion is *Kansas City Southern Rly. Co. v. Board of County Comm'rs*, 183 Kan. 675, 331 P. 2d 899, a case which arose in Cherokee County. That was an action to recover taxes paid under protest. The taxpayer alleged in its petition that its property was assessed by the state commission of revenue and taxation at sixty per cent of its true value, while other property in the county was assessed locally at twenty-one per cent. It was alleged that this imbalance of assessed valuations was so grossly discriminatory as to constitute a constructive fraud and a violation of § 1, article 11 of the Kansas

Constitution, providing for a uniform and equal rate of assessment and taxation. This court held that the petition in that case stated a sufficient cause of action.

A similar situation came before the court in *C. B. & Q. Rld. Co. v. Comm'rs of Atchison Co.*, 54 Kan. 781, 39 Pac. 1039, where property of the plaintiff taxpayer was assessed by the state board of railroad appraisers at its true and actual value, while all other property in the county, by agreement of the local assessors, was assessed at twenty-five per cent of its true value. The concerted action of the township and city assessors, said the court, was in flagrant disregard of the statute requiring property to be assessed at true value, and resulted in gross discrimination in the taxation of the railroad's property.

In *Bank v. Lyon County*, 83 Kan. 376, 111 Pac. 496, another case of older vintage, the same principle is embraced. The evidence in the case disclosed that in Lyon County real estate was assessed at twenty-five per cent, personal property of one class at thirty per cent, and other personal property, including bank capital and surplus, at forty per cent of cash value. In holding the taxes levied against the plaintiff bank to be discriminatory the court declared:

". . . If all property in Lyon county had been assessed at forty per cent of its full value, the plaintiffs would have had no cause to complain. The fraud upon their rights results from the arbitrary distinction made between their property and other property. . . ." (p. 381.)

The facts now before us fit well the pattern of discrimination denounced in *Addington* and kindred cases. While it is true that Mr. Crouse was exonerated by the trial court of actual bad faith and fraudulent design in following the schedules required of him, good faith alone, as the trial court observed, does not justify an assessment, if it is in fact discriminatory. (*Addington v. Board of County Commissioners,* supra; *In re Petition of Hamm v. State,* 255 Minn. 64, 95 N. W. 2d 649.) In our view the gross discrepancy between the assessed value of Beardmore's oil and gas properties and the assessed value of real estate in Hodgeman County constitutes a constructive fraud in the sight of the law.

We are well aware of what was decided in *Cities Service Oil Co. v. Murphy,* supra, and *Sebits v. Jones,* supra, and have no intention of retracting what was said in either case. While the plaintiffs in *Cities Service* alleged their property in Haskell County was being

assessed at a ratio far greater than that for real property, the trial court found quite otherwise, and we upheld that finding.

The sole evidence offered to establish the assessment ratio of real estate in the *Cities Service* case was the assessment ratio study for 1965, which disclosed the ratio as being twelve per cent of justifiable value. The trial court found this to be insufficient proof of value on which it might base a comparison with plaintiffs' oil and gas properties. On appeal we said that while the assessment ratio study was admissible in evidence as tending to establish the assessment ratio of real estate, it was not conclusive evidence on the point, and that the trial court's finding, under the facts of that case, was justified.

In the *Sebits* case, although it is not disclosed in the opinion, the assessment ratio studies for several years were introduced in evidence to establish the real estate assessment ratio for 1965. There was no evidence offered in support of the studies, and the county assessor testified he had little faith in them. The trial court refused, under those circumstances, to find there was a deliberate assessment of real estate at twenty-one per cent of value, as the studies purported to show, and a judgment entered for the defendants was affirmed on appeal.

A quite different situation confronts us now. In the present case the trial court found that the median assessment ratio of real estate in Hodgeman County for 1965 was fourteen per cent. The evidence of the county assessor, himself, fully supports this finding, which thus becomes binding on us in this appeal.

The defendants call attention to *Harshberger v. Board of County Commissioners*, 201 Kan. 592, 442 P. 2d 5. That was an action to enjoin Ford County from using an assessment ratio exceeding nineteen per cent of justifiable value in assessing and taxing plaintiffs' properties, both real and personal. The basis on which the plaintiffs sought injunctive relief was this: that while Ford County property was assessed at thirty per cent of justifiable value, property in five of the six adjacent counties was being assessed at only nineteen per cent of its justifiable value. Since the state levied ad valorem taxes on all property within the state, and since certain hospital and school districts were located partly in Ford and partly in adjoining counties, the plaintiffs contended they were unequally burdened by taxes for the same public services.

In denying relief, this court held it lacked jurisdiction to enter the order prayed for; and that courts cannot fix the values of property for purposes of taxation, inasmuch as the assessment of property is administrative in character, not judicial. We therefore declined, gently but firmly, to be drawn into the assessment business through the rear door.

The *Harshberger* case does not mean, however, that action cannot be maintained to recover protested taxes under appropriate circumstances. We made this clear in *Cities Service* where, in denying relief, we said:

". . . This is not to say that inequality or lack of uniformity in assessment if knowingly, intentionally or fraudulently made, will not entitle a taxpayer to relief under the provisions of K. S. A. 79-2005." (p. 294.)

In *Builders, Inc. v. Board of County Commissioners*, 191 Kan. 379, 381 P. 2d 527, the plaintiff sought to enjoin the collection of taxes levied against it on the ground that its shopping center property was arbitrarily assessed at twenty-two per cent of actual value while other shopping centers were assessed at not more than six per cent. The trial court, in hearing the matter, dismissed the injunction action against the State Board of Equalization and its members at the close of the plaintiff's evidence. On appeal, this court held that when the Board and its members were dismissed as defendants, the trial court lost jurisdiction to proceed, since the Board, being the last administrative agency to act on plaintiff's claim for relief, was a necessary party to the lawsuit. However, we proceeded to say in that case:

"This does not mean that the taxpayer is without recourse. The appellee [plaintiff] had an adequate remedy at law under G. S. 1949, 79-2005, whereby it might have paid the tax under protest, and then brought suit to recover such amount as may have been improperly paid . . ." (p. 385.)

For the year 1965, K. S. A. 79-1439, relating to the assessment of real and tangible personal property subject to general property taxes, provided as follows:

"From and after January 1, 1964, all real and tangible personal property which is subject to general property taxes shall be assessed uniformly and equally at thirty percent (30%) of its justifiable value, as hereinafter defined and provided."

In the present case the trial court found that the assessment ratio of real property in Hodgeman County was fourteen per cent of justifiable value. That finding is supported by substantial competent

evidence. The evidence further established that oil and gas leases were assessed for that same year, through the use of state schedules prepared for such purpose, at thirty per cent of justifiable value.

We are constrained to hold that the inequality which existed between the assessment of Beardmore's oil and gas leases on the basis of thirty per cent of justifiable value and the assessment of real property on the basis of but fourteen per cent of justifiable value was so gross and arbitrary as to constitute constructive fraud.

Such being the case, the plaintiffs are entitled to recover the taxes paid under protest, provided the same were accurately computed. In this connection we might add that plaintiffs' figures do not appear to be challenged, assuming their position be found correct.

Because of the conclusion we have reached on the cross appeal it would be an exercise in futility for us to pursue the questions raised in the appeal itself. Accordingly, the defendants' appeal from the judgment entered in the court below must be dismissed as moot.

Beardmore's cross appeal is sustained and this case is remanded with directions to enter judgment in plaintiffs' favor in accordance with the views expressed in this opinion.