No. 45,600

PAUL McMANAMAN and EDNA McMANAMAN, *Appellants*, v. THE BOARD OF COMMISSIONERS OF FORD COUNTY, KANSAS, composed of URBAN KLENKE, B. WAYNE STITT and R. W. ROENFELDT: ALICE ROGERS as County Treasurer; LILLIAN EVANS as County Clerk; UNIFIED SCHOOL DISTRICT NO. 225, composed of AUSTIN CHANCE, DON HILDENBRAND, MELVIN BELL, C. E. OLSON, RAYMOND ORR and LESLIE WAKEMAN; and RON DWYER as Director of Property Valuation for the State of Kansas, *Appellees*.

(468 P. 2d 243)

Opinion filed April 11, 1970.

*Robert M. Baker,* of Ashland, argued the cause, and was on the brief for the appellants.

*David L. Patton,* county attorney, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: The plaintiffs (appellants) are owners of real estate in Ford county. A portion of their land is situated in Unified School District No. 225, which has within its boundaries real estate located in Ford, Meade, and Gray counties. Pursuant to the procedure outlined in K. S. A. 79-2005, plaintiffs protested payment of the second half of their 1967 taxes due the school district and the State of Kansas, claiming the same to be illegal and void because unequal rates of assessment of property within the same taxing unit or district were applied by the various counties.

Within the statutory time plaintiffs commenced an action in Ford county district court to recover the taxes paid under protest. Plaintiffs joined as defendants in the action the officials of Ford county, the school district, and the state director of property valuation. The school district, the county clerk, and board of county commissioners filed separate motions to be dismissed as defendants for the reason they were neither indispensable, necessary, nor proper parties. Before the motions were ruled on, the district court, on its own initative, dismissed the action on the basis the court lacked jurisdiction over the subject matter under the facts alleged in the petition, citing as authority *Harshberger v. Board of County Commissioners,* 201 Kan. 592, 442 P. 2d 5.

The parties agree that the question presented for our considera-

tion is whether or not the district court had jurisdiction under K. S. A. 79-2005 to hear and determine the matters alleged in the petition. More properly, we believe, the issue is whether or not the petition stated claims upon which relief could be granted.

The petition contained three causes of action, all pertaining to the inequality and lack of uniformity in the assessment of property within the *same taxing district*—the school district on the one hand, and the State of Kansas on the other. By their first cause of action plaintiffs sought recovery of $523.73, the amount of taxes due Unified School District No. 225 by virtue of a 25.67 mill levy imposed against their Ford county property lying within the school district. In their second cause of action they sought to recover $29.42, the amount of taxes due the State of Kansas and levied on their Ford county property as the result of a statewide 1.5 mill levy.

The petition alleged that the school district includes land in Ford, Gray and Meade counties, and that for the year 1967 Ford county property within the school district was assessed at 30% of justifiable value by the county assessing officials, while other like and similar property within the school district in Gray and Meade counties was assessed at 20% and 15%, respectively. Thus, application of the school district's 25.67 mill levy to the different rates of assessment resulted in landowners in Ford county (the plaintiffs) having to pay double the amount of taxes paid by landowners in Meade county, and 50% more than those in Gray county. The petition also alleged there existed the same disparity in the valuation and assessment of property in other counties throughout the state with the same discriminatory result in respect to application of the statewide 1.5 mill levy.

The first two causes of action concluded with similar allegations to the effect that since the state constitution (Art. 11, § 1) requires that all taxes be uniform with an equal rate of assessment, the act of assessing property in one part of a taxing district at a certain percentage of justifiable value, while assessing other like and similar property in another part of the same taxing district at another percentage of justifiable value, constitutes an arbitrary distinction between these taxpayers' property and other property, all in the same taxing district, and as such, constitutes a constructive, if not an actual, fraud upon the plaintiffs, and makes the assessments illegal.

In their third cause of action, which substantially incorporated the earlier allegations of the petition, plaintiffs requested the court

to enjoin the defendants from levying and collecting any further taxes for the benefit of Unified School District No. 225 and the State of Kansas under their respective levies until the existing "gross and unconstitutional inequities" were corrected and alleviated.

Plaintiffs' counsel frankly concedes he has patterned his case as closely as possible to *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P. 2d 315, which was followed by this court in *Beardmore v. Ling,* 203 Kan. 802, 457 P. 2d 117. Both cases were instituted under the protest statute (K. S. A. 79-2005) and involved grossly unequal assessment of property within the same taxing district, namely, the county.

In *Addington* we held the assessment of Addington's elevator property at more than 30% of true value to be discriminatory in a constitutional sense when all other property within the same county was assessed at the median ratio of only 12% of true value. The basis of our decision was that the disparity in the rate of assessment was so arbitrary, oppressive and grossly discriminatory that it constituted constructive fraud on the rights of the taxpayer in that it destroyed uniformity and equality in the manner of fixing assessed valuation, and was, therefore, illegal. At page 532 of the opinion we find this statement:

". . . Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; . . ."

The same pattern of discrimination existed in *Beardmore,* where we held the assessment of plaintiffs' oil and gas property on the basis of 30% of justifiable value, as compared to an assessment ratio of 14% for real estate by taxing officials of Hodgeman county, was so grossly discriminatory and·oppressive as to amount to constructive fraud, and plaintiffs were entitled to recover the excessive taxes paid.

The principles upon which these two cases are bottomed were well stated in *Beardmore* as follows:

"The Constitution and statutes of this state make provision for uniform and equal rates of assessment and taxation of property.

"Uniformity in taxation implies equality in sharing the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation. . . .

"Mere excessiveness of assessment or errors in judgment or mistakes in making assessments will not invalidate an assessment, but inequality or lack

of uniformity, if knowingly excessive or intentionally or fraudulently made, will entitle a taxpayer to relief. . . ." (Syl. ¶¶ 1, 2 and 3.)

Plaintiffs seek to bring themselves within the ambit of *Addington* and *Beardmore* by contending Unified School District No. 225 (in their first cause of action) and the state as a whole (in their second cause of action) each constitutes a taxing unit or taxing district. Thus, they say, the facts alleged in the petition presented claims upon which relief could be granted under authority of those cases. We are unable to agree.

In dismissing the petition, the district court relied on our decision in *Harshberger v. Board of County Commissioners,* supra. While the taxpayers in that case sought injunctive relief under K. S. A. 60-907 (*a*), the problem presented bore striking similarity to the facts here. Plaintiffs were owners of taxable property situated in two hospital districts and five school districts located partially in Ford county and partially in other counties. The controversy arose because Ford county property was assessed at 30% of justifiable value, while property in five of the six adjacent counties was assessed at only 19% of justifiable value.

Plaintiffs there, just as here, contended (1) since the state levied a 1.5 mill tax on all property subject to ad valorem taxation within the state, and many counties, including those adjoining Ford county, were not assessed at 30% of justifiable value, and (2) since the hospital districts and school districts were located partly in Ford and partly in the adjoining counties, they were being subjected to an unequal burden of taxation for the same public services. We held that the district court was without power or authority to grant the relief prayed for, namely, that defendants be enjoined from using an assessment ratio in excess of 19% of justifiable value in assessing and collecting ad valorem taxes for 1967 in Ford county.

Much of what was said in the *Harshberger* opinion applies with equal force to the instant case. There, we made it very clear, as we have in other cases, *Board of County Commissioners v. Brookover,* 198 Kan. 70, 422 P. 2d 906; *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 436 P. 2d 982; *Cities Service Oil Co. v. Murphy,* 202 Kan. 282, 447 P. 2d 791; *Sebits v. Jones,* 202 Kan. 435, 449 P. 2d 551; *Beardmore v. Ling,* supra, that the courts have limited jurisdiction in assessment matters and cannot fix the value of property for purposes of taxation. The assessment of property is administrative in character and should remain free of judicial interference in the

absence of fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud.

The limited scope of our jurisdiction in matters of assessment is the same, whether relief is sought by way of injunction under K. S. A. 60-907 (a) or under the tax protest statute (K. S. A. 79-2005). (See, *Beardmore v. Ling,* supra, and *Cities Service Oil Co. v. Murphy,* supra.) The remedy followed is really immaterial as to the extent to which the courts will permit themselves to be drawn into the assessment business. Under proper circumstances they are not helpless to grant relief under either 60-907 (a) or 79-2005 for inequality or lack of uniformity in assessments which have been knowingly, intentionally or fraudulently made.

The taxing process of government is made up of three components—the assessment of property, the levy of the tax against the property, and the collection thereof. (*Commercial National Bank v. Board of County Commissioners,* 201 Kan. 280, 440 P. 2d 634.) The assessment and valuation of property has always been considered an incident to the taxing power. It, like all matters concerning taxation, is a legislative function and exists only by virtue of statute. The legislature, as part of its constitutional duty to provide a uniform and equal rate of assessment, enacted in 1963 K. S. A. 79-1439 (since amended), requiring that from and after January 1, 1964, all real and tangible personal property subject to general property taxes be assessed uniformly and equally at 30% of justifiable value. (See, also, K. S. A. 79-501, 79-1406 [amended 1969].)

We have no quarrel with plaintiffs' broad assertion that a school district, as a subdivision of state government with power to make levies for its operation, may properly be referred to as a taxing unit or taxing district. (*Sebits v. Jones,* supra.) Likewise, the state as a whole may be said to comprise a taxing unit or district for the purpose of levying state general taxes. (*Board of County Commissioners v. Brookover,* supra.) But the power of these taxing units, or districts, extends only to the making of levies for their respective operations.

School districts and the state as a whole (except for public utilities [K. S. A. 79-5a01, 79-6a01, and 79-1404]) have no assessing power or authority with respect to the valuation of property for tax purposes. By legislative fiat that responsibility is vested in the county, which is charged with the administration of all laws

relating to assessment, equalization and collection of real and personal property taxes (K. S. A. 79-1411a). Each county comprises a separate assessment district, and the county assessor, or county clerk acting as assessor, has the duty of assessing all property in the county (K. S. A. 79-1411b, 79-1412a).

In this case the actions of the assessing officials of Ford county are not challenged in any way. The petition on its face discloses that for the year 1967 these officials assessed plaintiffs' property and all other property in Ford county at 30% of justifiable value, as the statutes then required (K. S. A. 79-501, 79-1406, 79-1439 [amended 1969]).

The substance of plaintiffs' complaint is that because of the unequal and nonuniform assessments among the various counties—principally Ford, Gray and Meade—they are being subjected to an inequitable burden of taxation on their Ford county property for taxes levied by Unified School District No. 225 and the State of Kansas.

This being a protest action (K. S. A. 79-2005), the school district, while a proper party, because it is interested in the valuation to which its levy will be applied, has nothing to do with the determination of assessments and, therefore, is not a necessary or indispensable party. (*Sebits v. Jones,* supra.) The statute, likewise, makes no provision for including the director of property valuation, for he neither has, nor does he claim, any beneficial interest in the taxes sought to be recovered. Furthermore, he has no duty or function relative to the refund of plaintiffs' taxes. Any refund to be made will be by the county treasurer of Ford county on the basis of the trial court's decision. (See, *Cities Service Oil Co. v. Kronewitter,* 199 Kan. 228, 428 P. 2d 804.) A protest action, by its very nature, is directed to the acts of local taxing officials in the county in which the taxes are protested, rather than officials of other counties or the state director of property valuation.

Where the foundation of a taxpayer's complaint is, as in this case, the failure of assessing officials in other counties to comply with the statute (K. S. A. 79-1439) and assess property at 30% of justifiable value, or the failure of the director of property valuation to face up to his statutory responsibility of insuring that assessment of property between different counties be uniform and equal, we hold that these matters cannot furnish the basis for granting relief in a protest action. In reaching this conclusion, we in no way

suggest that relief is unavailable under K. S. A. 79-2005 where there is inequality or lack of uniformity in assessments amounting to constructive fraud *within the county* where the taxes are protested. (See, *Beardmore v. Ling,* supra; *Sebits v. Jones,* supra; *Cities Service Oil Co. v. Murphy,* supra; *Addington v. Board of County Commissioners,* supra.)

The first and second causes of action in plaintiffs' petition failed to state claims for which relief can be granted.

The third cause of action likewise must fail. The case essentially was a statutory action under K. S. A. 79-2005 to recover the last half of 1967 taxes paid under protest. Had the petition in the first or second causes of action stated a claim for which relief could be granted, the district court would have had no power to act beyond the 1967 taxes, and no authority beyond ordering a refund of such taxes found illegal or void. (See, *Cities Service Oil Co. v. Kronewitter,* supra, and *Shriver v. Board of County Commissioners,* 189 Kan. 548, 370 P. 2d 124.) Despite the liberal joinder of claims and remedies permitted under K. S. A. [now 1969 Supp.] 60-218, we perceive no good reason for permitting the joinder of a claim for injunctive relief in a protest action. An injunction looks to the future, beyond the year for which the taxes in controversy are sought to be recovered. For that matter, the same facts alleged in the first two causes of action form the basis for plaintiffs' request for injunctive relief. The facts having been found insufficient to warrant the court's ordering a refund of the 1967 taxes, the third cause of action for an injunction falls of its own weight. Moreover, plaintiffs' counsel at oral argument candidly admitted the matter has now, in all likelihood, become moot.

Our decision in this case should not be interpreted as sanction by this tribunal of the serious inequities plaguing taxpayers throughout the state who find themselves in the same or similar position as the plaintiffs. The problems arise principally as the result of the failure of the responsible administrative officials to carry into effect the assessment law enacted by the legislature in 1963. Since that law was passed, taxpayers have been beset with unequal tax burdens resulting from the fact that not all counties were assessing property at the 30% rate. The constitution and the statutes demand not only equality of assessment as between property owners within a county, but also as between property owners of the state.

The legislature, being specifically charged by the constitution

with providing an equal rate of assessment, also has the authority to provide the means and agencies for enforcing its responsibilities. The statutes speak clearly on the subject.

As we indicated earlier, the primary responsibility for assessment of real estate and tangible personal property subject to taxation rests with the county. (K. S. A. 79-1411a.) The legislature has also provided when a reappraisal of properties within a county should be made. (K. S. A. 79-1413a; *Board of County Commissioners v. Brookover,* supra.)

More germane to the problem posed in this case are the statutory enactments designed to enforce the constitutional demand that assessments be uniform and equal in the various counties throughout the state. As already suggested in *Harshberger v. Board of County Commissioners,* supra, where all counties comprising a taxing unit or district are not complying with the assessment law, the state board of tax appeals sitting as the state board of equalization, has power to equalize assessments between different counties of the state. (K. S. A. 79-1409.)

Of even greater importance, in our opinion, is that the legislature saw fit to vest ultimate supervisory responsibility for the administration of the assessment and tax laws of the state squarely on the director of property valuation with attending enforcement power and authority. (K. S. A. 79-1401, 79-1402, 79-1404, and 79-1405.) For example, the director has general supervision and direction over the county assessors in the performance of their duties. (K. S. A. 79-1401.) He is empowered to exercise general supervision over assessors, boards of county commissioners, county boards of equalization, and all other boards of levy and assessment, *to the end that all assessments of property, real, personal, and mixed, be made relatively just and uniform and at 30% of justifiable value* (L. 1963, ch. 460) [30% of fair market value (L. 1969, ch. 433)]; and to *require* all such officials, *under penalty of forfeiture and removal from office,* to assess all property of every kind and character at such value. (K. S. A. 79-1404 *First.*) The director is obligated to confer with, advise and direct assessors, boards of county commissioners, boards of equalization and others required under the law to make levies and assessments, in respect to their duties under the statutes. (K. S. A. 79-1404 *Second.*) He is empowered to direct proceedings and prosecutions to enforce laws relating to penalties, liabilities and punishment of public officials and others

for failure or neglect to comply with his orders or with the provisions of the statutes governing the return, *assessment* and taxation of property. In addition, he has authority to cause complaints to be made against various taxing officials for their removal from office for official misconduct or neglect of duty. (K. S. A. 79-1404 *Third.*) In carrying out these duties, he is authorized to call for the assistance of the attorney general or county attorneys in their respective counties. (K. S. A. 79-1404 *Fourth.*) In addition, the director is empowered to require any county board of equalization to make such orders as the director of property valuation shall determine are just and necessary, and to direct such boards to raise or lower the valuation of any property, real or personal; and generally to do or perform any act or to make any order or direction to any county board of equalization or any local assessor as to the valuation of any property which, in the judgment of said director, seems just and necessary, *to the end that all property shall be valued and assessed in the same manner and to the same extent as any and all other property, real or personal, required to be listed for taxation.* (K. S. A. 79-1404 *Sixteenth.*) Other powers and duties of the director my also be found in Chapter 79, Article 14 of K. S. A.

We further note that a penal statute (K. S. A. 79-1426) has been inserted by the legislature making it unlawful for any assessing officer, including the director of property valuation, whose duty it is to list, value, *assess or equalize real estate or tangible personal property for taxation,* to willfully or knowingly fail to appraise, assess or to equalize the values of any real estate or tangible personal property subject to general property taxes as required by K. S. A. 79-1439. The penalty for violation of this statute includes forfeiture of office.

These clearly defined official duties of the director of property valuation leave no doubt that he has full power and authority to enforce the assessment laws promulgated by the legislature and to insure that all property subject to tax is assessed uniformly and equally.

Had plaintiffs pursued a proper remedy, their grievance is one which the director could have been compelled to alleviate by the exercise of the power and authority conferred upon him by the legislature. Unfortunately, they chose to proceed by the protest route.

The judgment of the district court is affirmed.