No. 68,703
No. 69,031
No. 69,291

STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, Attorney General, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, MARK BE-SHEARS, Secretary, Kansas Department of Revenue, and DAVID C. CUNNINGHAM, Director, Division of Property Valuation, Kansas Department of Revenue, and SALLY THOMPSON, State Treasurer, *Appellees*.

BOARD OF COUNTY COMMISSIONERS OF GREELEY COUNTY, KANSAS, *et al., Proposed Intervenors/Appellants.*

(856 P.2d 151)

Opinion filed July 9, 1993.

*Benjamin J. Neill*, of Neill, Bornholdt & Terrill, of Overland Park, argued the cause, and *Thomas H. Bornholdt*, of the same firm, was with him on the briefs for appellants.

*Terry D. Hamblin*, assistant attorney general, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by numerous boards of county commissioners and county appraisers from the trial court's denial of their motions to intervene in a lawsuit filed by the Attorney General of the State of Kansas against the Kansas Department of Revenue and its Secretary, Mark Beshears (Secretary); David C. Cunningham, Director of the Division of Property Valuation (Director); and the State Treasurer, Sally Thompson.

Highly summarized, the Attorney General commenced an action in June 1992, alleging that "the valuation and assessment of real property throughout the State of Kansas is not in substantial compliance with the law" and that the defendants failed to administer and supervise adequately the statewide reappraisal program.

The Attorney General sought a declaratory judgment that current statewide reappraisal is unconstitutional and is not in substantial compliance with the law. The Attorney General requested an injunction to compel a statewide reappraisal to ensure all real property "is appraised at fair market value on a uniform and equal basis" and to enjoin permanently "the defendants from receiving, accepting, collecting or attempting to collect" certain property tax revenues from a county in which the appraisal system is not in substantial compliance "with the Constitutional requirement of uniform and equal fair market appraisal." The property tax revenues at issue are those pursuant to K.S.A. 76-6b01 (statewide mill levy to support state institutions of higher education), K.S.A. 1992 Supp. 76-6b04 (statewide mill levy to support state institutions caring for the mentally ill and retarded, caring for and providing vocational training for the handicapped, or caring for deprived and delinquent children), and K.S.A. 72-6431 (statewide mill levy to support school finance).

The defendants answered, denying that they had failed to perform their duties and that the valuation and assessment of real property throughout the state was not in substantial compliance with the law.

With the agreement of the Attorney General and the defendants, the trial court subsequently filed an order for corrective action. The trial court stated it had continuing subject matter jurisdiction and made numerous findings relating to the defendants' statutorily authorized duties. The court decreed that if anyone failed to cooperate or comply with the Director's or the Secretary's directives, that individual "shall be mandamused or otherwise brought before [the trial court] to compel compliance with or for any other remedies available to the Secretary or Director by law." Also included in the court's order was a directive for the Department of Revenue to develop "a *valid* sales ratio study, as required by 1992 Substitute for House Bill 2816, to pinpoint those classes and subclasses of property in each county that require further appraisal review" and to "establish minimum standards of education and training for county personnel performing 'appraisal analysis functions.' " It appears the trial judge, with the parties' consent and by agreement, ordered the defendants to follow legislative direction, *i.e.*, to follow the law.

Several motions to intervene then were filed by the proposed intervenors, the boards of county commissioners and the county appraisers for Butler, Coffey, Finney, Grant, Greeley, Hamilton, Harvey, Haskell, Johnson, Kearny, Lyon, McPherson, Meade, Morton, Ottawa, Rice, Saline, Stanton, Stevens, and Wyandotte Counties. (The proposed intervenors requested that the remaining boards of county commissioners and county appraisers be added as additional party defendants. That was not done, and that issue is not before us.) The trial court denied all motions to intervene.

The proposed intervenors, with the exception of those from Johnson County, whose motion to appear as *amicus curiae* was granted, appealed from the trial court's denial of their motions to intervene. The appeal was transferred from the Court of Appeals to this court, pursuant to K.S.A. 20-3018(c).

The proposed intervenors claim the trial court erred in denying their motions to intervene pursuant to K.S.A. 60-224(a). That statute provides, in pertinent part:

"(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a

practical matter substantially impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

An order denying an application to intervene is a final, appealable order. *Campbell American Legion v. Wade*, 210 Kan. 537, Syl. ¶¶ 6, 7, 502 P.2d 773 (1972). The standard of review is abuse of discretion. Although intervention of right is construed liberally in favor of intervention, three factors must be present: substantial interest in the subject matter, inadequate representation of the proposed intervenor's interest, and timely application. *Herrmann v. Board of Butler County Comm'rs*, 246 Kan. 152, 155, 785 P.2d 1003 (1990).

We begin by addressing whether the proposed intervenors had a substantial interest in the subject matter. In considering the motions for intervention, the trial court initially noted the proposed intervenors had the burden of persuading the trial court of their "right to participate in state-level policy and administrative decisions" because the Attorney General filed suit against only "state-level officers and entities charged with making, and ultimately enforcing, policy decisions affecting property taxation throughout Kansas" and because the Attorney General did not allege wrongdoing on the part of any particular county or county official. The trial court found the proposed intervenors did not have a substantial interest in the subject matter of the litigation, reasoning the legislature exclusively delegated "all powers relating to property taxation and valuation" to the Department of Revenue and the Director of Property Valuation. See K.S.A. 1992 Supp. 75-5105 (the Secretary of Revenue supervises the Director of Property Valuation, who administers the Division of Property Valuation); K.S.A. 79-1402 (the Director has "general supervision of the system of taxation throughout the state"); K.S.A. 1992 Supp. 79-1476 (the Director administers and supervises "a statewide program of reappraisal of all real property located within the state").

In particular, the trial court relied upon "the depth, extent, and breadth of the Director's powers." See, *e.g.*, K.S.A. 79-1401 (the Director has "general supervision and direction of the county assessors . . . and shall regulate and supervise the due performance thereof"); K.S.A. 79-1403 (in the course of an investigation,

the Director has authority "to require local officers whose duties pertain to the assessment and collection of taxes" to report to the Director in the form prescribed); K.S.A. 1992 Supp. 79-1404 *First* (the Director has "general supervision over the administration of the assessment and tax laws of the state, over the county and district appraisers, [and] boards of county commissioners . . . to the end that all assessments of property" are "relatively just and uniform" and assessed at "actual and full cash market value"); K.S.A. 1992 Supp. 79-1404 *Second* (the Director has authority "[t]o confer with, advise and direct" local officials statutorily charged with making levies and assessments); K.S.A. 1992 Supp. 79-1404 *Third* (the Director is authorized to instigate prosecutions against or to initiate removal from office county officials who fail to comply with the Director's orders or statutory requirements concerning assessment and taxation of property); *McManaman v. Board of County Commissioners*, 205 Kan. 118, 126, 468 P.2d 243 (1970) ("the legislature saw fit to vest ultimate supervisory responsibility for the administration of the assessment and tax laws of the state squarely on the Director of Property Valuation with attending enforcement power and authority"). The trial court concluded that, with regard to their taxation functions, the proposed intervenors were "ministerial agents of the State."

We also note K.S.A. 1992 Supp. 79-1479 requires county appraisers to submit to the Director quarterly progress reports concerning action taken to appraise county property. The statute continues that if the Director determines "any county has failed, neglected or refused to properly provide for the appraisal of property or the updating of the appraisals," the Director can file a complaint with the Board of Tax Appeals (BOTA). If BOTA finds the county is not in substantial compliance with the law, BOTA can order the Director to assume immediately the duties of the county appraiser until the Director decides the county is in substantial compliance with the law.

The proposed intervenors argue the trial court erred in finding they had no substantial interest in the subject matter of the case. Initially, the proposed intervenors assert the nature of the relief requested alone compels intervention. The Attorney General's requested relief included a permanent injunction against receiving, collecting, or attempting to collect certain property tax rev-

enues. According to the proposed intervenors, the power to receive, collect, or attempt to collect property tax revenues resides with county officials. For support, the following is cited:

"School districts and the state as a whole (except for public utilities [K.S.A. 79-5a01, 79-6a01, and 79-1404]) have no assessing power or authority with respect to the valuation of property for tax purposes. By legislative fiat that responsibility is vested *in the county, which is charged with the administration of all laws relating to assessment, equalization and collection of real and personal property taxes (K.S.A. 79-1411a). Each county comprises a separate assessment district, and the county assessor, or county clerk acting as assessor, has the duty of assessing all property in the county (K.S.A. 79-1411b, 79-1412a)."* (Emphasis supplied by proposed intervenors.) *McManaman,* 205 Kan. at 123-24.

"Beginning with the year 1956 the county is hereby declared to be the governmental unit charged with the primary responsibility for the administration of all laws relating to the assessment, review, equalization, extension and collection of real and personal property taxes, except as hereinafter provided." K.S.A. 79-1411a.

The proposed intervenors suggest the above authority stands for the proposition that the county, not the Director, is primarily responsible for administering tax laws and that the county officials' powers are substantive and discretionary. Therefore, the proposed intervenors maintain the trial court erred in finding the legislature has conferred all powers relating to property taxation and valuation exclusively upon the Department of Revenue and the Director of Property Valuation.

In *McManaman,* the plaintiffs owned land situated in a particular school district that encompassed real estate in three counties. The three counties' rates of assessment were not equal. The plaintiffs' causes of action pertained "to the inequality and lack of uniformity in the assessment of property within the *same taxing district*—the school district on the one hand, and the State of Kansas on the other." 205 Kan. at 120.

The portion of the opinion upon which the proposed intervenors rely must be considered in context with other language in the opinion, which the proposed intervenors fail to discuss. The *McManaman* court also stated:

"The taxing process of government is made up of three components—the assessment of property, the levy of the tax against the property, and the collection thereof. [Citation omitted.] The assessment and valuation of prop-

erty has always been considered an incident to the taxing power." 205 Kan. at 123.

"As we indicated earlier, the primary responsibility for assessment of real estate and tangible personal property subject to taxation rests with the county. . . .

. . . .

"Of even greater importance, in our opinion, is that the legislature saw fit to vest ultimate supervisory responsibility for the administration of the assessment and tax laws of the state squarely on the director of property valuation with attending enforcement power and authority. (K.S.A. 79-1401, 79-1402, 79-1404, and 79-1405.)" 205 Kan. at 126.

This court then set forth in detail the powers and authority of the Director of Property Valuation. 205 Kan. at 126-27. Based upon the Director's "clearly defined official duties," we concluded the Director "has full power and authority to enforce the assessment laws promulgated by the legislature and to insure that all property subject to tax is assessed uniformly and equally." 205 Kan. at 127.

*McManaman* does not support the proposed intervenors' argument. Contrary to their assertion, county officials are not primarily responsible for administering tax laws. The *McManaman* court concluded, after reviewing the pertinent statutes, that the Director has the ultimate supervisory responsibility for administering assessment and tax laws. See generally Note, *Kansas Property Classification and Reappraisal: The 1986 Constitutional Amendment and Statutory Modifications*, 29 Washburn L.J. 26, 46-59 (1989)(thorough discussion of statewide reappraisal in Kansas).

Additionally, the Attorney General contends the trial court did not ignore the nature of the relief requested. The Attorney General claims that, even if the trial court had, the nature of the relief requested is irrelevant because the relief requested does not apply to the proposed intervenors in that they are not defendants in this action. If the relief requested is granted, the Attorney General maintains that "only the State treasurer, as the only defendant who actually collects property tax revenue from the levies in issue, would be enjoined from '. . . receiving, accepting, collecting, or attempting to collect' " the applicable property tax revenues. According to the Attorney General, the relief

requested was crafted to avoid disrupting local government operations.

The proposed intervenors also dispute the trial court's reliance upon *League of United Latin Amer. Citizens v. Clements*, 884 F.2d 185 (5th Cir. 1989), and *Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982). The trial court acknowledged these cases factually were distinguishable from the instant case, but found them persuasive authority for the proposition "that the proper parties to defend state-level policies and practices are not the political subdivisions of the state, such as cities and counties, but rather are the state-level entities charged with the administration and direction of those policies and practices."

In *Clements*, Midland County moved to intervene in a suit challenging Texas' at-large system of electing state district judges. It was determined Midland County was not a "real party in interest" and did not have a "legally cognizable interest" that justified intervention because Texas counties do not have a role in the at-large system of electing judges. In Texas, the power to create or reshape judicial districts is vested in three legislative bodies, the state legislature, the Judicial Districts Board, and the Legislative Redistricting Board. 884 F.2d at 187-88. The proposed intervenors contend *Clements* is not persuasive authority because the situations are too diverse: Texas counties have no role in the at-large system of electing judges. In contrast, Kansas counties and county officials are responsible for the valuation and assessment of property.

In *Wade*, certain Illinois counties and cities sought to intervene as defendants in a suit brought to bring the defendants, the State of Illinois and the United States Department of Transportation, into compliance with federal statutes concerning highway construction. The Seventh Circuit Court of Appeals concluded the applicants had "no direct legally protectable interest that could be impaired and impeded." 673 F.2d at 186. In reaching that conclusion, the court noted:

"[T]he only focus . . . [of] the ongoing litigation . . . is whether the governmental bodies charged with compliance, defendants, have satisfied the federal statutory procedural requirements in making the administrative decisions regarding the construction . . . . In a suit such as this, brought to require compliance with federal statutes regulating governmental projects,

the governmental bodies charged with compliance can be the only defendants." 673 F.2d at 185.

The proposed intervenors argue that, if anything, *Wade* supports their position because, here, counties are charged with compliance and county officials suffer the consequences of noncompliance.

The trial court cited *Clements* and *Wade* as additional, persuasive authority for its ruling. In finding the proposed intervenors did not have a substantial interest in the subject matter of the case, the trial court relied upon the Director's statutorily authorized duties and upon the *McManaman* decision, both of which support the court's ruling.

Additionally, the proposed intervenors maintain they have a substantial interest in the subject matter of this case because they are "affected parties"—it is the county officials whose actions will be scrutinized and who will have to defend against allegations of substantial noncompliance with the law. Corrective action, if any, will be directed toward county appraisers, and the county is responsible for funding such corrective action. See K.S.A. 1992 Supp. 79-1413a (if BOTA determines property appraisal "is not in substantial compliance with the law and the guidelines and timetables prescribed by the director of property valuation," BOTA can order a reappraisal of all or part of the property in a county at the county's expense); K.S.A. 1992 Supp. 79-1482 ("The board of county commissioners . . . is . . . authorized to levy a tax . . . in an amount necessary to pay all costs incurred in conducting programs of countywide reappraisal and complying with the provisions of this act."); see also *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 13, 687 P.2d 603 (1984) ("Substantial compliance simply means compliance consistent with the purpose of the statute.").

The problem with this claim is that it is academic and not supported by the record on appeal, which contains no allegations concerning any particular county or county appraiser. Until some action is taken against a particular county or county official, the proposed intervenors are not affected parties and do not have a substantial interest in the subject matter of this case. County officials will have a remedy if and when action is taken against them.

The proposed intervenors' final argument concerns the existence of a statutory administrative process to resolve disputes between the Director and county officials. See, *e.g.*, K.S.A. 74-2438 (anyone aggrieved by "any finding, ruling, order, decision, or other final action on any case of the . . . director of property valuation" may appeal to BOTA); L. 1992, ch. 131, § 5 (should the board of county commissioners disagree with the ratios determined for the county by the Director of Property Valuation, the board may appeal to BOTA). This process, according to the proposed intervenors, creates a substantial interest that mandates their intervention. Additionally, the proposed intervenors claim the fact the Director's decisions are not final is further proof the proposed intervenors are not mere rank and file ministerial agents of the State.

The proposed intervenors further contend this statutory administrative process does not protect their interests in the case at bar because the trial court's order for corrective action creates a potential judicial bypass of administrative remedies. The order provides that county officials not in substantial compliance with the law "shall be mandamused or otherwise brought before [the trial court] to compel compliance or for any other remedies available to the Secretary or Director by law." As with the previous claim, this contention also is speculative because a judicial bypass of administrative remedies has not occurred. The wording of the order does not preclude exhaustion of administrative remedies. Moreover, the parties to the order have not appealed the order and are, in fact, in agreement with the order. The merits of the order are not before this court.

We cannot say no reasonable person would agree with the trial court's finding that the proposed intervenors did not have a substantial interest in the subject matter of the litigation. See *In re Marriage of Soden*, 251 Kan. 225, Syl. ¶ 9, 834 P.2d 358, *cert. denied* ___ U.S. ___, 121 L. Ed. 2d 540 (1992) (abuse of discretion defined). Because intervention of right pursuant to K.S.A. 60-224(a) requires the occurrence of three factors and because the proposed intervenors lack one of those factors, a substantial interest in the subject matter, there is no reason to address the other two factors.

The trial court did not abuse its discretion in denying the motion for intervention.

Affirmed.