(851 P.2d 1027)

No. 68,643

IN THE MATTER OF THE APPEALS OF ANDREWS, CHARLES, JR., and BAIRD, RANDY, FOR THE YEAR 1990 FROM THE DECISIONS OF THE COUNTY BOARD OF EQUALIZATION OF SHAWNEE COUNTY, KANSAS.

Opinion filed May 7, 1993.

*Kenneth M. Carpenter,* of Carpenter Chartered, of Topeka, for the appellants.

*Russell P. Wright,* assistant county counselor, and *Linda P. Jeffrey,* county counselor, for the appellee.

Before LEWIS, P.J., ROYSE, J., and DAVID F. BREWSTER, District Judge, assigned.

LEWIS, J.: This appeal involves the valuation of property for tax purposes. Charles Andrews, Jr., and Randy Baird are the owners of the properties in question and are aggrieved with the values placed on their properties by Shawnee County. The appellants will be referred to in this opinion as "Taxpayers." The governmental taxing unit involved is Shawnee County, the appellee, which will be referred to as "County."

The Taxpayers each own one-half of an office building located at the corner of Huntoon Street and Topeka Boulevard in the City of Topeka. This building is divided into two identical office suites. Each office suite contains 2,866 square feet, and one is the mirror image of the other. In this opinion, Suite A will refer to the office owned by Andrews and Suite B to the office owned by Baird.

The property is not owned by the Taxpayers in undivided interests. The property has been divided along the center line of the office building. Andrews has a deed to Suite A and owns it along with 4,050 square feet of real estate on which Suite A is located. Baird has a deed to Suite B and owns that suite along with the 9,750 square feet of real estate on which it is located. The parking lot as well as ingress and egress to the building is part of the real estate on which Suite B is located and is owned by Baird. Andrews has a joint use agreement with Baird so that Suite A has equal use of the parking lot and ingress and egress over the property owned by Baird.

In 1990, the County valued both of these properties for tax purposes at identical values of $110,300. K.S.A. 79-412 requires the assessor to "separately value the land and improvements." In assessing the properties and complying with K.S.A. 79-412, the County assessment is as follows:

| | | | |
|---|---|---|---|
| SUITE A: | Land | $24,300 | (4,050 sq. ft.) |
| | Building | 86,000 | (2,866 sq. ft.) |
| | TOTAL | $110,300 | |
| SUITE B: | Land | $41,400 | (9,750 sq. ft.) |
| | Building | 68,900 | (2,866 sq. ft.) |

TOTAL        $110,300

The Taxpayers challenged the valuation on these properties. They pursued that challenge through various administrative channels until they arrived at the Board of Tax Appeals (BOTA). BOTA concluded that the properties were appropriately valued. The Taxpayers next sought judicial review under the Act for Judicial Review and Civil Enforcement of Agency Actions. This review was conducted by the district court, which affirmed the decision of BOTA and upheld the valuation of the Taxpayers' properties.

The Taxpayers have now invoked the jurisdiction of this court, and the resolution of the issues presented is properly before us. We operate under a slight handicap because, as we view it, neither BOTA nor the district court dealt with the Taxpayers' principal issue in their challenge to the valuation.

The Taxpayers point out that they are entitled by Article 11, Section 1 of the Kansas Constitution to a "uniform and equal rate of assessment and taxation." They do not argue that the rate of taxation in Shawnee County is not uniform and equal. The argument is that their properties have not been valued and assessed on a uniform and equal basis. The Taxpayers argue and the evidence shows that Suite A and Suite B are identical in virtually every aspect. Despite this fact, the County has listed the value of Suite A at $86,000 and Suite B at $68,900. The Taxpayers suggest that one of two identical office suites cannot be worth $17,100 more than the other. The fact that these office suites are valued in such a manner is, the Taxpayers argue, proof that their properties have not been valued on a uniform and equal basis. On the surface, this argument has considerable merit. The resolution of this issue is much more complex than it might appear.

## STANDARD OF REVIEW

This appeal is from the decision of the district court affirming the decision of BOTA. The issue before the district court was to review BOTA's decision in the manner required by law. Under these circumstances:

"The scope of appellate review of an agency's action is to determine if the district court reviewed the action in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *.et seq.* The party asserting invalidity of the action has the burden of proving the

invalidity. *Vakas v. Kansas Board of Healing Arts,* 248 Kan. 589, Syl. ¶ 4." *Kaufman v. Kansas Dept. of SRS,* 248 Kan. 951, 959, 811 P.2d 876 (1991).

The scope of review for the district court is set out at K.S.A. 77-621(c) as follows:

"The court shall grant relief only if it determines any one or more of the following:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

As we view this appeal, the focus is on subparagraphs (7) and (8) as set forth above. The Taxpayers argue in their brief that the action of the County in valuing their properties is "so far wide of the mark as to be outside the realm of fair debate." At another point, the Taxpayers characterized the action of the County appraiser and of BOTA as "arbitrary, capricious, and unreasonable." It appears to us the Taxpayers are contending that the action of BOTA was "otherwise unreasonable, arbitrary or capricious" or was not supported by substantial competent evidence. The district court found that the action of BOTA was not unreasonable, arbitrary, or capricious and that the valuation was supported by substantial competent evidence.

The propriety of the conclusion of the district court is the issue we must determine on appeal.

## UNIFORMITY AND EQUALITY

To put the issue into its proper perspective, certain observations need to be made of facts shown in the record.

The assessed aggregate value of each unit is exactly the same—$110,300. Despite their arguments concerning uniform and equal valuation, each of the Taxpayers will pay the same tax on the same aggregate valuation on each unit. If the aggregate value of each unit was arrived at in a uniform and equal fashion using appropriate methods of valuation, it would appear the Taxpayers' argument is without merit.

The Taxpayers, however, focus their uniformity and equality argument not on the aggregate value assigned to their properties but on the separate value placed on each unit. It appears that the Taxpayers would have us discard the aggregate value and determine this case on the diverse values placed on each unit.

As separately valued under K.S.A. 79-412, we conclude that Suite A and Suite B could not been valued on a uniform and equal basis. It is inconceivable that these two identical office suites, which are part of and make up a single building, could have a discrepancy in values of over $17,000. Despite this fact, it appears that in valuing each unit at an aggregate of $110,300, the County observed appropriate valuation methods and valued the properties in a uniform and equal manner. The question is whether there can be uniformity and equality when the separate unit values, as set out under K.S.A. 79-412, are not uniform and equal.

Article 11, Section 1 of the Kansas Constitution provides that "the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation." There is no question that, as the law of Kansas has developed, uniformity and equality must exist: " 'Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation.' " *Beardmore v. Ling*, 203 Kan. 802, 806, 457 P.2d 117 (1969), *overruled on other grounds* 214 Kan. 690, 697, 522 P.2d 942 (1974).

"[A] valuation contrary to the principles of the Constitution is an illegal or void valuation." *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 121, 734 P.2d 1125 (1987).

In *Addington v. Board of County Commissioners*, 191 Kan. 528, 531-32, 382 P.2d 315 (1963), the Supreme Court stated:

"Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation. The duty to assess at full value is not supreme but yields to the duty to avoid discrimination. [Citations omitted.]

"It is apparent that uniformity is necessary in valuing property for assessment purposes so that the burden of taxation will be equal. [Citation omitted.] It makes no difference what basis of valuation is used, that is, what percentage of full value may be adopted, provided it be applied to all alike. The adoption of full value has no different effect in distributing the burden than would be gained by adopting thirty per cent, twenty-one per cent·or twelve per cent as a basis, so long as either was applied uniformly. Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxation. In the instant case if all the property in the county had been assessed at thirty per cent of its true value, plaintiff would have no cause to complain. The fraud upon plaintiff's rights resulted from the arbitrary distinction made between his elevator property and other property in the county. *Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief.* [Citations omitted.]" (Emphasis added.)

There is no question that if the valuation of the properties in question is not uniform and equal then the tax assessment in question is illegal and void. The next area which we must examine is the basis of valuation utilized in the instant matter.

## METHOD OF VALUATION

In an effort to ensure a uniform and equal basis of valuation, the legislature has provided some basic rules. K.S.A. 1992 Supp. 79-501 provides:

"Each parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the appraiser from actual view and inspection of the property. The price at which such real property would sell at forced sale may be taken as a criterion of such fair market value in money in the market place of such sale if the appraiser believes such price to be a reasonable factor in arriving at fair market value. The price at which real property would sell at auction may be taken as the criterion of fair market value in money if the appraiser determines such sale to be an arms-length transaction between a willing buyer and seller. In addition, land devoted to agricultural use shall be valued as provided by

K.S.A. 79-1476, and amendments thereto. Tangible personal property shall be appraised at its fair market value in money except as provided by K.S.A. 79-1439, and amendments thereto. All such real and tangible personal property shall be assessed at the rate prescribed by K.S.A. 79-1439, and amendments thereto."

The matter is further refined by K.S.A. 1992 Supp. 79-503a, which provides:

" 'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. For the purposes of this definition it will be assumed that consummation of a sale occurs as of January 1.

"A variance of 10% in any individual appraisal at fair market value shall not be considered willful neglect of the county appraiser's duty to achieve fair market value. The foregoing provision shall not be construed to mean that a series of such variances does not constitute willful neglect.

"Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and other factors including but not by way of exclusion:

(a) The proper classification of lands and improvements;

(b) the size thereof;

(c) the effect of location on value;

(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

(e) cost of reproduction of improvements;

(f) productivity;

(g) earning capacity as indicated by lease price or by capitalization of net income;

(h) rental or reasonable rental values;

(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values;

(j) restrictions imposed upon the use of real estate by local governing bodies, including zoning and planning boards or commissions; and

(k) comparison with values of other property of known or recognized value. The assessment-sales ratio study shall not be used as an appraisal for appraisal purposes."

In *Board of Johnson County Comm'rs v. Greenhaw,* 241 Kan. at 126-27, the Kansas Supreme Court indicated that compliance with 79-503a was a vital factor in the determination of whether a tax assessment was uniform and equal:

"K.S.A. 79-503a sets out the factors to be considered for appraising land at its fair market value. 'Fair market value' means the amount of money that a well-informed buyer is justified in paying and a well-informed seller

is justified in accepting for property in an open and competitive market. Sales are not the sole criteria for determining fair market value but are used in connection with cost, income, and other factors, *i.e.*, the classification of lands and improvements, size, the effect of location on value, depreciation, cost of reproducing improvements, productivity, earning capacity, rental value, sale value, and comparison with values of other property of known or recognized value.

. . . .

"When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, *the essential question is whether the standards prescribed in K.S.A. 79-503a have been considered and applied by the taxing officials.* The assessment of real property which takes into consideration only some of the pertinent statutory factors of K.S.A. 79-503a cannot be upheld where evidence indicates there has not been a uniform and equal rate of assessment and taxation in the county." (Emphasis added.)

There is no evidence in this record to indicate that there has not been a uniform and equal rate of assessment and taxation in Shawnee County. As a result, if the methodology employed to arrive at the fair market value of these properties is in accordance with K.S.A. 1992 Supp. 79-503a, we would have little choice but to approve the valuation. As will be seen, the income or earning capacity method was employed to value the properties in question. In addition to that, the County considered the cost method and comparable sales in determining the appropriate method to value the properties.

## THE VALUATION OF THE TAXPAYERS' PROPERTIES

BOTA and the district court both concluded that the Taxpayers' properties had been valued at fair market value in a uniform and equal manner and in accordance with the statutes. The record indicates that this was a correct decision, at least insofar as it applies to the aggregate value of the properties.

The county appraiser testified that, in assessing of these properties, the County used the cost approach and the income approach, and considered comparable sales. The ultimate assessment was based on the income approach. This approach, according to the testimony, best fit the particular properties in question.

The cost approach, as applied by the County, resulted in a total valuation of $138,230 for Suite A and $165,040 for Suite B.

It is obvious that this method is less favorable to the Taxpayers. The County determined that the fair market value was best achieved by the income method, which resulted in the value of $110,300 for each unit.

The record shows that the County also considered comparable sales in valuing these properties. The county appraiser testified:

"We have several comparable sales information, and basically this deals with what our people pay for comparable properties in Shawnee County, and it goes through anywhere from, I believe the number is $68 per square foot, $63 a square foot to $45 a square foot. In the case of this particular property, we believe we have the overall value at $38 a square foot, which is less than indicated values that the purchasers in Shawnee County are paying.

"Then ultimately we believe the property was put on the market, at least one half of the property, and the asking price was $200,000. I don't know if it sold, but we are considerably underneath that number."

The Taxpayers presented their own valuation. They value Suite A at $84,076.28 and Suite B at $108,301.28. They also point out that the building was located in a high-crime area and was subject to vandalism, and they argue that the district court and BOTA failed to give proper consideration to this evidence.

There is no reason to assume that the Taxpayers' evidence was not considered. The fact is, neither BOTA nor the district court found the Taxpayers' evidence persuasive. They were the triers of fact. The argument of the Taxpayers is an attempt to have this court reweigh the evidence and decide the facts and this, of course, we cannot do.

Based on our review of the record, we conclude that the decisions of the district court and BOTA were based on substantial competent evidence. There is no indication that the action of BOTA or of the district court was unreasonable or arbitrary. The valuation of the Taxpayers' properties was based on several factors listed in K.S.A. 1992 Supp. 79-503a, and there is no indication that in the aggregate the valuation was not uniform and equal. The findings of BOTA and the district court are both supported by substantial competent evidence.

That conclusion, however, does not solve the issues raised on this appeal. The Taxpayers' uniform and equal argument is based upon the values placed separately on the two units. We must decide whether a uniform and equal aggregate valuation is nul-

lified by a valuation of the units which was not uniform and equal.

## K.S.A. 79-412

The problem on this appeal is the direct result of the application of K.S.A. 79-412 to the valuation process. That statute reads as follows:

"It shall be the duty of the assessor to examine all such buildings and other improvements as are not expressly exempt from taxation and shall separately value the land and improvements; but the value of the land and the improvements thereon shall be entered on the assessment roll in a single aggregate."

The requirements of this statute appear to be incompatible with the use of the income method of valuation, at least under the circumstances shown in this action.

The income method was determined to be the best means of assessing the properties at fair market value. This method is clearly authorized by K.S.A. 1992 Supp. 79-503a in valuing property for tax purposes. The distortion in the separate values of the two office suites was caused by combining the income method with the requirements of K.S.A. 79-412.

BOTA, in its order upholding the County's valuation, observed:

"5. The Board finds that the taxpayer is apparently attempting to combine two separate methodologies used to value property. The income approach measures the present worth of the future benefits of a property by capitalization of the net income stream over the remaining economic life of the property. The approach involves making an estimate of the effective gross income of a property. This is derived by deducting the appropriate vacant and collection losses from the properties' estimated economic rent. Economic rent is evidenced by a comparison of the yields of similar properties. From this figure then is deducted applicable operating expenses; the cost of taxes, insurance, and reserve allowances for replacements, which results in an estimate of net income. The net income may then be capitalized into an indication of value. *This approach considers the property as a whole and does not, nor cannot determine the amount of contributory value each square foot of land adds to the property.*

"The cost approach to value calculates the replacement cost new of the building less depreciation then assigns a per front foot value for the land typically using the abstraction method. These totals are then combined to achieve a final estimate of value. In this method the amount of land owned by each taxpayer would be of significant importance.

However, the cost approach was not used to value this commercial building.

"6. The Board finds that the county upon review of the income and expenses information presented in this matter is recommending a value of $110,300 for each side of the building, or a combined value of $220,600. The cost approach to value indicates a value of $138,230 for the Andrews property and $165,040 for the Baird property for a combined total of $303,270. *The Board notes that the income approach to value is considered in most instances to be the most reliable indicia of value for commercial property. This approach is applied to commercial property unless the county is unable to obtain sufficient income and expense data to construct a model. In this instance the county has a model for office buildings located in the same neighborhood as the subject. The Board finds therefore, that the evidence presented does not justify deviating from the norm in this instance."* (Emphasis added.)

Suite A has 4,050 square feet of land while Suite B has 9,750. Since the income factor cannot take into consideration the fact that Suite B has more square feet of land than Suite A, it creates a problem when the separate values of land and buildings must be specified under K.S.A. 79-412.

The county appraiser explained how the separate values required by 79-412 are calculated:

"MR. SMITH: Basically this property was appraised much as any other property in Shawnee County or commercial properties. We used the cost approach and the income approach to try to arrive at a value. Basically the appraiser came to the conclusion that the income approach would best fit this particular property and arrived at a value of $110,300 each. That's based on the assumption that both units, 'A' and 'B', are the same square footage. They would both command approximately the same amount of rent. If you capitalize the income, you would come to a figure of $110,000. As you know from setting on these hearings before that it is a fairly simple calculation that once you have determined what the overall value is, you try to determine what the land value is and you subtract land value from overall value to get a building value in this case, and we've been through this many times.

"I know Mr. Carpenter disagrees with us fairly violently. If the income is going to be equal on both buildings, then we believe that the value should be equal. I think that's overall what the county is showing. Whether the land value remains equal or whether it is different, basically it doesn't cause us a problem. I would say that if they actually sold this property, there is certainly more land than attributable to the rear section of the building. How an investor would actually approach that, I can't tell you. Certainly that would be taken into consideration someway."

It is apparent that, in cases of this nature, the income approach does not permit accuracy in separating the values of the land and the building. As explained by the county appraiser in this case, the County, before breaking down the values as required by K.S.A. 79-412, first values the land, then simply subtracts that from the aggregate value, and whatever is left is deemed the value of the building. In this case, Suite A has less land, so the value of its land is low and the subtraction leaves more for the building value. Suite B has more land and, therefore, its land value is higher and more is subtracted from the aggregate, leaving less value for its building. The separate values placed on the office suites in this instance are not appraised values. These values as shown are simply what is left in a mathematical problem of subtraction. As a result, we conclude that the separate stated values of these two office suites are not only not uniform and equal, but also they are not values as we generally understand that term.

The Taxpayers are entitled to a uniform and equal basis of valuation. The income method employed to value their properties is an approved method of arriving at fair market value. The district court and BOTA both concluded that the valuation of the Taxpayers' properties was appropriate in all respects and was uniform and equal. After a careful examination of the record, we hold that this decision was correct as it related to the aggregate value of the Taxpayers' properties.

On the other hand, we have no choice but to conclude that the separate "values" shown for Suite A and Suite B are fictional and have no relationship to the actual value of the properties. These values are not uniform and equal, and they are not true values at all; they are only the end result of subtracting one number from another. This is the inevitable result of attempting to separate the aggregate value arrived at by the income method into separate values for land and buildings as required by K.S.A. 79-412.

In the final analysis, we must determine whether the problems can be reconciled. If they cannot, then we must decide what valuation controls in determining whether the Taxpayers' properties have been valued on a uniform and equal basis.

As we see it, there are two possibilities:

(A) Both the aggregate value and the separate values under 79-412 must be uniform and equal. In this instance, the valuation is disapproved and some method other than the income method must be used where the two office suites do not sit on the same size tract of land.

(B) The aggregate value, which is the basis for the assessment of tax paid on the properties, is the controlling value. If it has been arrived at in an appropriate fashion and is uniform and equal, then the valuation complies with the law and the Constitution. Any distortions caused by a separation of the aggregate value under K.S.A. 79-412 must simply be ignored.

We hold that the constitutional standard of uniform and equal valuation applies to the aggregate value of the properties in question. This is the value on which the tax is assessed. This is the only value which could cause prejudice to the Taxpayers if it were not uniform and equal. The ultimate purpose of our scheme of valuation is accomplished only by the aggregate value:

"The plain language of K.S.A. 79-412 mandates that the values for improvements and land be entered on the assessment rolls in a single aggregate. When complied with, the result is a single tax levy for each tract of real estate, including improvements—a result in line with the ultimate purpose of the taxation act. See *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 591, 701 P.2d 1314 (1985); K.S.A. 79-102." *In re Tax Protest of Spangles, Inc.*, 17 Kan. App. 2d 335, 338, 835 P.2d 699 (1992).

We do not imply by this decision that the separate values stated under K.S.A. 79-412 are without relevance in all instances. In this instance, those values are distorted and without real relevance insofar as the aggregate total is concerned. Under such circumstances, the disparity in the value of the identical office suites is not indicative of a lack of uniformity and equality. The values of the office suites are not indicative of an unequal or intentionally high assessment. They are nothing more than a mathematical anomaly caused by conflicting statutes. The separate values shown may very well constitute a violation of the provisions of K.S.A. 79-412. Under these particular circumstances, that violation has no relevance in our determination of whether the Taxpayers' properties were assessed in an appropriate manner.

In this case, the value of $110,300 per unit was arrived at in the manner required by law.

K.S.A. 79-412 was enacted by the legislature in 1911 and has not been amended since that time. Under these facts, the results of an attempt to comply with it have produced confusion and distortion. It appears to us that the legislature needs to deal with this problem in the future by amending K.S.A. 79-412 to bring it up to date with modern valuation methods.

In the final analysis, the distortion in values produced by K.S.A. 79-412 does not prejudice the Taxpayers in any way. The values on which the taxation on these properties will be based is the aggregate value which was arrived at in a manner provided by law and on a basis that is uniform and equal. The decision of the district court is affirmed.

Affirmed.