The Honorable Laura McClure State Representative, 119th District 202 S. 4th Osborne, Kansas 67473
Dear Representative McClure:
You request our opinion regarding valuation and classification of machinery and equipment under article 11, section 1 of the Kansas constitution. Three of your questions involve the method of valuing commercial and industrial machinery and equipment if the retail cost when new cannot be ascertained. Your fourth question is how machinery and equipment owned by not-for-profit organizations should be classified.
Article 11, section 1 provides in part:
 "(a) . . . Except as otherwise hereinafter specifically provided, the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation. . . . Property shall be classified into the following classes for the purpose of assessment and assessed at the percentage of value prescribed therefor:
. . . .
 "Class 2 shall consist of tangible personal property. Such tangible personal property shall be further classified into six subclasses, shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:
. . . .
 "(5) Commercial and industrial machinery and equipment which, if its economic life is seven years or more, shall be valued at its retail cost when new less seven-year straight-line depreciation, or which, if its economic life is less than seven years, shall be valued at its retail cost when new less straight-line depreciation over its economic life, except that, the value so obtained for such property, notwithstanding its economic life and as long as such property is being used, shall not be less than 20% of the retail cost when new of such property ................... 25%".
 See also K.S.A. 1994 Supp. 79-1439(b)(2)(E).
Clearly this provision envisions valuation of commercial and industrial machinery and equipment based upon its retail cost when new. On occasion, however, a piece of commercial or industrial machinery or equipment may be sold used and the purchaser and appraiser may be unaware of its retail cost when new. You note that in such circumstances the division of property valuation of the department of revenue (PVD) has determined that a "used factor" may be applied to the used purchase price in an attempt to estimate the retail cost when new of the item. Because the actual retail cost when new is not used, and because similar items may end up being valued differently if the used purchase price of those items differs, you question whether the "used factor" method meets the constitutional requirements for valuing the property based on its retail cost when new and assessing it on a uniform and equal basis within the subclass.
The 1995 Personal Property Guide, issued by PVD pursuant to its statutory authority to assist county appraisers in valuing property, K.S.A. 75-5105a, 79-1401, 79-1402 and K.S.A. 1994 Supp.79-1404, provides in part:
"Retail Cost When New
 "Once the final information for schedule 5 is obtained, the county appraiser must determine the retail cost when new of each item. For items that are purchased used, this may entail estimating the retail cost when new by applying the `used factor' to the used purchase price. . . . However, if the actual retail cost when new of an item can be obtained from a reliable source
(e.g., a copy of the original invoice from the seller), that figure should be used instead of estimating the retail cost when new by applying the used factor. The county appraiser may also find better estimates of the retail cost when new than the used factor provides. For example, an estimate of the retail cost when new of construction equipment is available from the Dataquest Green Guide." 1995 Personal Property Guide, Section II, Schedule 5, p. 53, (emphasis added).
The "used factor" is arrived at by dividing the economic life of an item by its remaining economic life when purchased used. Seeid., Table II, p. 65. This quotient is then multiplied by the used purchase price. Id.
According to the guide, the "used factor" is to be resorted to only if there is no other more reliable means of estimating retail cost when new. If the retail cost when new is known or ascertainable, clearly it should be used. If it is not known or ascertainable, the only apparent alternatives are to estimate it, or forego the tax entirely. Either alternative may result in inequities, although the former would appear to be more fair than the latter. Further, it is clear that the constitution does not exempt such property; it is never to be valued at less than 20% of "retail cost when new" for as long as it is being used. While the "used factor" has been approved for usage by PVD, it is not the sole, or necessarily the preferred, method for arriving at an estimate of retail cost when new. The Guide directs appraisers to use the most reliable source available. Further, if the used purchase price does not appear to be consistent with an arms-length transaction, the appraiser may adjust the purchase price if such adjustment is supported and documented.
The legislature has not set forth a different method for determining retail cost when new when it is otherwise unascertainable. PVD has authority to promulgate guidelines for valuing property and its interpretations and implementation of valuation provisions are entitled to some deference [StateDepartment of SRS v. Public Employee Relations Board,249 Kan. 163, 166 (1991)]. The alternative would be an inability to tax at all commercial and industrial machinery and equipment for which the retail cost when new is not ascertainable. For these reasons it is our opinion that estimates of retail cost when new, including the "used factor" when necessary, are permissible under the constitution. See Colorado Interstate Gas Co. Board of MortonCounty Comm'rs, 247 Kan. 654, 660 (1990) (constitution is not to be narrowly or technically construed, but should be interpreted to mean what the words imply to men of common understanding); Statev. Sessions, 84 Kan. 856, 862 (1911) (constitution must be interpreted to carry out the principles of the government, and not be given technical construction which will defeat them).
With regard to the uniform assessment requirement, the constitutional classification in question requires that property be assessed uniformly as to subclass at a prescribed percentage of value, and article 11, section 1 also requires that the legislature provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation unless otherwise specifically provided in that provision. "`Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation.'" In re Tax Appealof Andrews, 18 Kan. App. 2d 311, 315 (1993), quoting Beardmore v.Ling, 203 Kan. 802, 806 (1969), overruled on other grounds214 Kan. 690, 697 (1974). Quoting Addington v. Board of CountyCommissioners, 191 Kan. 528, 531-32 (1963), the Andrews Court went on to state:
 "`It is apparent that uniformity is necessary in valuing property for assessment purposes so that the burden of taxation will be equal. [Citation omitted.] It makes no difference what basis of valuation is used, that is, what percentage of full value may be adopted, provided it be applied to all alike. The adoption of full value has no different effect in distributing the burden than would be gained by adopting thirty per cent, twenty-one per cent or twelve per cent as a basis, so long as either was applied uniformly. Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxation. In the instant case if all the property in the county had been assessed at thirty per cent of its true value, plaintiff would have no cause to complain. The fraud upon plaintiff's rights resulted from the arbitrary distinction made between his elevator property and other property in the county. Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief. [Citations omitted.]' (Emphasis added.)" 18 Kan. App. 2d at 316.
Unlike the situation in the Addington case, where the PVD guide directed that all grain elevators be assessed at thirty percent of actual value while all other real property was to be assessed at twelve percent of actual value (this case being decided long before classification), the scenario you present involves an effort to get as close as possible to actual retail cost when new for purposes of assessment so that all commercial and industrial machinery and equipment will be valued as uniformly as possible. We therefore believe the concept is not violative of uniformity requirements. Whether a particular valuation runs afoul of this requirement must be determined on a case-by-case basis.
Should the legislature choose to enact a different method for arriving at retail cost when new when such is not ascertainable, it may do so as long as the legislation is consistent with the spirit of the constitutional provision.
Finally, you question whether machinery and equipment owned by not-for-profit entities should be classified as commercial and industrial machinery and equipment, or as "other tangible personal property not otherwise specifically classified." Neither the constitution nor the statutes define the term "commercial and industrial machinery and equipment" for purposes of this provision. However, some general and statutory definitions are enlightening. K.S.A. 79-1459 provides in part:
"The county appraiser shall:
. . . .
 "(e) Annually, as of January 1, classify all taxable and exempt real and personal property into one of the following classifications:
. . . .
 "Commercial. Commercial property shall include all land and improvements utilized or intended to be utilized as a business or income producing enterprise and all personal property subject to ad valorem taxation listed on commercial personal property statements."
For purposes of the highway advertising control act of 1972, the term "commercial or industrial activities" is defined as "those activities generally recognized as commercial or industrial by local zoning authorities in this state" excluding certain listed activities. K.S.A. 68-2231(d). "Commercial property" is defined generally as "[i]ncome producing property (e.g. office buildings, apartments, etc.) as opposed to residential property," Black's Law Dictionary 271 (6th Ed. 1990), and "industry" as "[a]ny department or branch of art, occupation or business conducted as a means of livelihood or for profit." Id. at 776. From these general definitions, and pursuant to the rule of constitutional construction that words are to be given the meaning they imply to persons of common understanding (see Colorado Interstate, supra), it appears that machinery and equipment must be used with the intention of producing income for it to be considered commercial or industrial. Whether a particular entity's property is used for such purposes must be determined on a case-by-case basis, though typically a not-for-profit entity will not make use of its machinery and equipment for profit or income-producing purposes.
In conclusion, estimating retail cost when new of a piece of commercial or industrial machinery or equipment in accordance with the guidelines established by the division of property valuation in its 1995 Personal Property Guide when the actual retail cost when new is unascertainable is not violative of article 11, section 1 of the Kansas constitution. Whether machinery and equipment should be classified as commercial or industrial will depend on the use to which the machinery and equipment is put.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm