(972 P.2d 793)
No. 78,393

MARRIOTT CORPORATION, *Appellant,* v. BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, *Appellee.*

Opinion filed January 22, 1999.

*Robert J. O'Connor* and *Jeffrey R. Emerson,* of Morrison & Hecker, L.L.P., of Wichita, and *Robert J. Vancrum,* of the same firm, of Overland Park, for the appellant.

*Donald D. Jarrett*, chief counsel, of Johnson County Legal Department, for the appellee.

Before LEWIS, P.J., ELLIOTT, J., and RICHARD B. WALKER, District Judge, assigned.

LEWIS, J.: The Marriott Hotel is located near Interstate 435 and Metcalf Avenue in Overland Park. It has 397 guest rooms and approximately 15,000 square feet of meeting room and banquet space with facilities that are normally found in a luxury, full-service, convention hotel. The Marriott appeals from the valuation of the hotel for tax purposes and specifically from the action of the Board of Tax Appeals (BOTA) and the trial court, which upheld the appraisal of the Board of County Commissioners of Johnson County (County).

## THE APPRAISAL

The County appraised the Marriott at $23,988,680 for the tax years of 1993 and 1994. In contrast, the Marriott argues that the value of its hotel for those years was $16,100,000. We are essentially asked by the Marriott to determine that the decision of BOTA and the trial court to believe the evidence offered by the County rather than that offered by the Marriott was somehow reversible error.

"The scope of appellate review of an agency's action is to determine if the district court reviewed the action in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The party asserting invalidity of the action has the burden of proving the invalidity. *Vakas v. Kansas Board of Healing Arts*, 248 Kan. 589, Syl. ¶ 4." *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 959, 811 P.2d 876 (1991).

The scope of review in cases of this nature is set out at K.S.A. 77-621(c), which lists our scope of review as well as that of the trial court. In reviewing an agency action, we may reverse it if

"(1) [t]he agency action . . . is unconstitutional on its face or as applied;

. . . .

"(3) the agency has not decided an issue requiring resolution;

. . . .

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole . . .; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c).

We also note:

"BOTA is a specialized agency that exists to decide taxation issues. BOTA's decisions should be given great credence and deference when it is acting in its area of expertise. However, if we find that BOTA's interpretation is erroneous as a matter of law, we should take corrective steps." *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 3, 930 P.2d 1366 (1997).

In reviewing findings of fact and conclusions of law by BOTA, we "must determine if the findings are supported by substantial competent evidence and whether they are sufficient to support the trial court's conclusions of law." *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 19, 774 P.2d 919 (1989).

Further:

"[An appellate court] may not try a case de novo or substitute its judgment for that of an administrative agency. A rebuttable presumption of validity attaches to all actions of an administrative agency and the burden of proving arbitrary and capricious conduct lies with the party challenging the agency's action. [Citations omitted.]" *Kaufman v. Kansas Dept. of SRS*, 248 Kan. at 961.

We have a limited standard of review over actions by BOTA on tax matters. The record as it now exists has certainly not shown BOTA to have been guilty of arbitrary and capricious conduct in valuing the taxpayer's property on the evidence presented. Indeed, we conclude that BOTA's findings of fact on the issue of valuation are supported by substantial competent evidence.

The County called two expert witnesses, one of whom appraised the hotel at $23,988,680, the other at $23,080,000. It is apparent that BOTA and the trial court chose to believe the witnesses called by the County rather than the witnesses called by the Marriott. The County's experts employed "the Rushmore model" in their appraisal.

The Marriott called Michael P. McRobert as its expert witness. McRobert appraised the hotel at $16,100,000 and used an income

approach. Again, it is obvious that BOTA did not choose to adopt the testimony of the expert called by the Marriott.

It appears to us that to decide valuation, BOTA or the trial court could have decided to adopt the opinions of the County's witnesses or the opinions of the Marriott's witnesses. As the finder of fact, that was their prerogative. We are not a finder of fact, and we will not revisit the question of which witnesses were the most credible and most believable.

The Marriott attacks the Rushmore model of appraisal by suggesting it inflates the value of the real estate by including "nontaxable business value" in the totals. We are not possessed of the expertise to declare the Rushmore model defective based on the record on appeal in this case. The record does not bear out or support the Marriott's contention.

The Rushmore model is a method of valuing hotels. It was developed in Hotels and Motels: A Guide to Market Analysis, Investment Analysis, and Valuations, a book written by Stephen Rushmore, MAI, published in 1992. The book is now published by the Appraisal Institute.

The Marriott attacks the Rushmore model as being "inherently flawed" and asks us to reverse the determination of valuation based on the use of an invalid method. There is evidence offered by the County that the method in question was neither flawed nor invalid.

Although Marriott attacks the Rushmore model, it can cite no cases, Kansas or elsewhere, that have declared that method of valuing a hotel to be inherently flawed to the point that its use has resulted in a reversal of the valuation.

In *Hull Junction Holding Corp. v. Princeton Borough*, 16 N.J. Tax 68, 84 (1996), a property tax appeal, the court quoted from Rushmore's book when discussing hotel valuation.

In *Prudential Ins. v. Tp. of Parsippany*, 16 N.J. Tax 58, 60 (1995), both parties used Rushmore's method to determine net operating income and eliminate the income recognized to result from personal property and business value.

In *In re J.F.K. Acquisitions Group*, 166 Bankr. 207, 209 (Bankr. E.D.N.Y. 1994), Rushmore was termed by the court, "a well recognized and eminent expert in the field of hotel appraisers."

In *In re Grand Traverse Development Co. Ltd. Partnership*, 150 Bankr. 176, 180 (Bankr. W.D. Mich. 1993), Rushmore was the court-appointed appraiser.

In *Glenpointe Assocs. v. Teaneck Tp.*, 10 N.J. Tax 380, 390 (1989), the court cited Rushmore's hotel valuation guide as authority. In addition, the court recognized and found reasonable Rushmore's method for extracting business value by subtracting from the hotel revenues the amount paid by the owner to a management company pursuant to the management contract. 10 N.J. Tax at 391.

In *District of Columbia v. Wash. Sheraton Corp.*, 499 A.2d 109, 113 (D.C. 1985), both parties' experts recognized Rushmore as a leading authority in the field of valuation of hotels.

In *Estate of Slutsky v. C.I.R.*, T.C. Memo 1983-578, 16 (U.S. Tax Court 1983), an expert used the Rushmore model to appraise a hotel.

It appears to us that the Rushmore model has been accepted in a number of litigated matters and rejected in none that have been brought to our attention. There is certainly nothing in this record to indicate the Rushmore method was so inappropriate and so badly flawed that its use requires a reversal of the valuation of the Marriott. To the contrary, BOTA, whose function is dealing solely with tax matters of this nature, stated:

"While we find that the county's use of the Rushmore method represents the fair market value of the property in this case, we stop short of saying that the Rushmore model is THE method to value all hotels. We do find that, in this instance, however, the Rushmore method was supported by the county's own figures and does represent the fair market value of the subject property."

In the final analysis, there is substantial competent evidence from which BOTA could have concluded that the County's experts, employing the Rushmore model, placed the fair market value on the Marriott. Accordingly, we affirm that decision of the trial court.

## UNIFORM AND EQUAL TAXATION

The Marriott next argues that its valuation violates the uniform and equal taxation requirements of the Kansas Constitution.

"Article 11, Section 1 of the Kansas Constitution requires that there be a uniform and equal basis for valuation of property for tax purposes." *In re Tax Appeal of Andrews*, 18 Kan. App. 2d 311, Syl. ¶ 1, 851 P.2d 1027, *rev. denied* 253 Kan. 859 (1993).

"Any valuation contrary to the uniform and equal clause of the Kansas Constitution is an illegal or void valuation." *In re Tax Appeal of Andrews*, 18 Kan. App. 2d 311, Syl. ¶ 2.

"When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, the essential question is whether the standards prescribed in K.S.A. 79-503a have been considered and applied by the taxing officials." *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 126, 734 P.2d 1125 (1987).

K.S.A. 79-503a provides:

" 'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. For the purposes of this definition it will be assumed that consummation of a sale occurs as of January 1.

"Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and other factors including but not by way of exclusion:

"(a) The proper classification of lands and improvements;

"(b) the size thereof;

"(c) the effect of location on value;

"(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

"(e) cost of reproduction of improvements;

"(f) productivity;

"(g) earning capacity as indicated by lease price, by capitalization of net income or by absorption or sell-out period;

"(h) rental or reasonable rental values;

"(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values;

"(j) restrictions imposed upon the use of real estate by local governing bodies, including zoning and planning boards or commissions; and

"(k) comparison with values of other property of known or recognized value. The assessment-sales ratio study shall not be used as an appraisal for appraisal purposes.

"The appraisal process utilized in the valuation of all real and tangible personal property for ad valorem tax purposes shall conform to generally accepted appraisal

procedures which are adaptable to mass appraisal and consistent with the definition of fair market value unless otherwise specified by law."

In *Andrews,* we cited *Addington v. Board of County Commissioners,* 191 Kan. 528, 531-32, 382 P.2d 315 (1963), as to what constitutes a violation of the uniform and equal requirement:

" 'Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxation. In the instant case if all the property in the county had been assessed at thirty per cent of its true value, plaintiff would have no cause to complain. The fraud upon plaintiff's rights resulted from the arbitrary distinction made between his elevator property and other property in the county. *Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief.* [Citations omitted.]' " 18 Kan. App. 2d at 316.

In *Board of Johnson County Comm'rs v. Greenhaw,* 241 Kan. at 126-27, the court said:

"K.S.A. 79-503a sets out the factors to be considered for appraising land at its fair market value. 'Fair market value' means the amount of money that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open and competitive market. Sales are not the sole criteria for determining fair market value but are used in connection with cost, income, and other factors, *i.e.*, the classification of lands and improvements, size, the effect of location on value, depreciation, cost of reproducing improvements, productivity, earning capacity, rental value, sale value, *and comparison with values of other property of known or recognized value.*

. . . .

"When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, the essential question is whether the standards prescribed in K.S.A. 79-503a have been considered and applied by the taxing officials. The assessment of real property which takes into consideration only some of the pertinent statutory factors of K.S.A. 79-503a cannot be upheld where evidence indicates there has not been a uniform and equal rate of assessment and taxation in the county." (Emphasis added.)

As will become apparent, we believe there is evidence which indicates that perhaps a uniform and equal rate of assessment and taxation may not have been attained in this case.

The Marriott argues that the method used to value its hotel could not have been uniform and equal with the method used to value the Doubletree Hotel, one of its competitors.

The Doubletree is a 357-room, full-service hotel located near Corporate Woods and about 2 miles from the Marriott, also in Overland Park. The members of this panel have personal knowledge of both facilities, and the disparity in the valuation of the hotels is rather striking and difficult to understand. The Doubletree is valued at $38,260 per room, which gives it a total estimated market value of $13,658,700. The Marriott, on the other hand, was valued at $60,425 per room, which gave it a total estimated market value of $23,988,680. Our mathematical computations indicate that the Marriott is valued at approximately 58% higher than is the Doubletree. We doubt whether such a disparity can possibly be the result of a uniform and equal valuation of both hotels.

BOTA made few findings of fact on the uniform and equal issue. Indeed, BOTA does not even indicate in its order what evidence it used to arrive at its decisions. The record on appeal is inadequate for a review of the uniform and equal issue. For instance, there is nothing in the record to indicate when and how the Doubletree was valued or what basis was used to compute its valuation. There is nothing to indicate or justify the huge disparity in values between what appear to be rather similar hotels.

There are some obvious differences between the hotels. The Marriott is newer and has a better location, as well as a higher average daily room rate than does the Doubletree. BOTA concludes that one distinguishing factor was that the Doubletree does not have the Marriott flag affiliation. It is true that the Doubletree did not have the Marriott flag affiliation, but it has its own flag affiliation, which needs to be taken into consideration.

Although they are obvious differences, these differences do not support the Marriott being valued at over $10 million higher than the Doubletree. Nor can we see the justification for the Marriott rooms being valued $22,165 each higher than a similar room at the Doubletree.

We are unable to determine whether the uniform and equal provisions of our Kansas Constitution have been violated. We can-

not do so until findings of fact are made on the question of uniform and equal basis for valuation. The comment we made in *Williams Natural Gas Co. v. Kansas Corporation Comm'n*, 22 Kan. App. 2d 326, 337, 916 P.2d 52 (1996), is equally applicable to this case:

"We are not a finder of fact; that status is occupied by the [Kansas Corporation Commission (KCC)]. Despite its status as a finder of fact and despite the vital nature of the question at hand, the KCC failed to focus on or make findings on this issue. This makes meaningful appellate review impossible."

We remand this case to BOTA for a full and complete inquiry on the question of whether the Marriott was valued in a manner violative of the uniform and equal provisions of our Kansas Constitution. This review should include the valuation of the Doubletree and a comparison of the methods and basis used to value the Doubletree vis-a-vis those used to value the Marriott. It must be determined whether the disparity between the two hotels indicates a violation of the Kansas Constitution. In deciding this issue, we direct BOTA to set forth written findings of fact and conclusions of law. We also provide that BOTA may, at its sole and complete discretion, open the record and receive new evidence relative to the issue, or if it feels the record is sufficient, resolve the question on the basis of the current record.

We have said that the valuation of the hotel was supported by substantial competent evidence. We have no doubt as to that particular holding. However, in the event that the process which reached that valuation violated the uniform and equal provisions of our Kansas Constitution, the valuation is illegal and void notwithstanding the fact it is supported by substantial competent evidence. For that reason, if BOTA should determine that the uniform and equal provisions of the Kansas Constitution were not met, it must also revalue the property in a manner consistent with our Kansas Constitution.

Accordingly, we reverse the decision of the trial court and BOTA and remand the matter to BOTA for a factual determination in regard to the Marriott's argument on uniform and equal taxation in a manner consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.